[Civ. No. 16565.   First Dist., Div. One.   May 2, 1956.]

EILEEN OTTINGER, Respondent, v. I. M. OTTINGER, Appellant.

Millington & Dell'Ergo for Appellant.

Thacher, Jones, Casey & Ball for Respondent.

PETERS, P. J.—The trial court, in this divorce action, decreed that plaintiff and defendant, formerly wife and husband, were tenants in common of certain property in San

Mateo County, and that plaintiff-wife was entitled to $250 attorney's fees. The defendant-husband appeals.

The parties were married in April of 1929 in Missouri, and went to live with defendant's parents on a farm near Greenville, Tennessee. The marriage was not a happy one. In January of 1930, plaintiff, after being severely beaten by defendant, left the farm, went to live in Greenville, secured a job, and filed an action for divorce. This action was dismissed when the parties effected a reconciliation. In 1936 plaintiff again left the farm, taking the parties' three living children with her, and proceeded to Greenville. She again filed an action for divorce, but again dismissed the action after a reconciliation. This time, however, plaintiff did not move back to the farm. There is a conflict as to whether the parties cohabited after this 1936 separation. Plaintiff testified that after the reconciliation, the parties lived together, in Greenville, until September of 1937, when the defendant left Tennessee in search of work, telling plaintiff that when he found it he would send for her and the children. Defendant went to West Virginia and sent plaintiff several letters from there, professing his love for the family, and on one occasion enclosed a $10 bill.

The defendant directly contradicted this testimony. He claims that his wife left him in 1936, and that thereafter the parties never again lived together; that he stayed on the farm until the last part of 1937, when he left Tennessee; that at that time his wife was living in Bristol, Virginia.

Two of the children of the parties corroborated their mother, testifying that they lived with their mother and father in Greenville in 1937.

Plaintiff testified that it was not until October of 1937 that she and the children went to Virginia. In 1939 she returned to Greenville and again filed a divorce action, which she again dismissed after entering into an agreement to such effect with her mother-in-law. Then plaintiff moved, with the children, to Oregon. Plaintiff testified that, after her husband left her in 1937, she supported herself and the children. Between 1937 and 1949 she corresponded with her mother-in-law and tried, without success, to find out defendant's address.

Sometime after the 1937 separation defendant came to California, arriving here with $5.00. Between 1940 and 1953, while living in California, he acquired real property appraised at $11,500, and trust deeds totaling $7,864.46.

In 1949 plaintiff found it necessary to secure defendant's

signature to a document involving real property acquired by her in Oregon, and finally secured defendant's San Mateo County address from the chief of police in Greenville. By correspondence she secured defendant's signature to the document. This was the first time that she knew of defendant's whereabouts since 1937. She did not personally see defendant, however, until 1953, when defendant came to Oregon to try to obtain her consent to an appearance in a divorce action he had filed in Nevada. She refused to sign the papers, and, on July 18, 1953, defendant secured a default decree of divorce in a Nevada court. Defendant had moved to Nevada in 1953, and, at the time of trial (May, 1954), was a registered voter and a resident of that state.

Plaintiff filed the present action on July 10, 1953, in San Mateo County. She secured personal service on defendant in California. The amended complaint charges defendant with desertion, wilful neglect, adultery and cruelty, and alleges that when defendant filed the Nevada action he was, in fact, a resident of California. She asked that the Nevada decree be declared void on the ground of lack of jurisdiction, prayed for a declaration that all of the property owned by defendant in San Mateo County was community property, asked for its division, and also prayed for alimony and separate maintenance, plus attorney's fees. The answer of defendant avers that the separation of the parties was by mutual consent, and sets up the Nevada decree secured on July 18, 1953, as a complete defense.

The trial court found that the defendant had in fact deserted plaintiff in 1937; that defendant was a resident of California between 1940 and 1953, but became a resident of Nevada in May of 1953; that while married to plaintiff and while a resident of California, defendant acquired, from his California earnings, certain real property and certain trust deeds; that in Nevada on July 18, 1953, defendant obtained a valid decree of divorce from plaintiff.

Based on these findings the trial court concluded that the real property and trust deeds in San Mateo County were the community property of the parties, and that by reason of the dissolution of the marriage by divorce the parties became and are tenants in common in equal shares in that property. A judgment so providing and also awarding plaintiff $250 attorney's fees was entered. Defendant appeals from those portions of the judgment decreeing plaintiff to be a tenant in common of the property and awarding plaintiff attorney's fees.

The basic contentions of appellant are that the evidence, as a matter of law, shows that plaintiff deserted defendant, and that under California law a deserting wife is not entitled to share in the husband's earnings during the period of their separation. Both contentions are erroneous.

In the first place, the respondent testified that after the 1936 separation the parties became reconciled and lived together until September, 1937, when appellant left for West Virginia, promising to send for respondent and the children. This he never did. The basic part of this testimony was corroborated by the two children of the parties. Thus, the finding that appellant in fact deserted respondent in 1937 is supported by substantial, although conflicting, evidence.

In the second place, even if the evidence did show, as a matter of law, desertion by respondent, at the times here relevant it was not the law of California that a deserting wife acquired no interest in the earnings of the husband after separation.

Appellant contends that under the old Spanish and Mexican laws of community property a deserting wife is not entitled to share in property subsequently earned by the husband. There is undoubtedly authority to that effect. The case of *Pendleton* v. *Brown*, 25 Ariz. 604 [221 P. 213], cited by appellant, undoubtedly so held. But the rule of that case is not applicable in this state. *Randolph* v. *Randolph*, 118 Cal. App.2d 584 [258 P.2d 547], expressly so held. There the wife deserted her husband in 1928. Twenty-five years later the husband sued for divorce, alleging desertion and cruelty. The trial court awarded the husband a divorce on the ground of desertion, but granted the wife one-half the community property. On appeal the husband urged the precise point here under discussion, namely, that a deserting wife gains no interest in subsequently acquired property of the husband. The court repudiated that contention, and, in doing so, stated (p. 585):

"Appellant's primary contention is that by so abandoning her husband the wife terminated the marital community and thereby lost all benefits incident to her marital status or was estopped from claiming them; he relies mainly on *Pendleton* v. *Brown*, 25 Ariz. 604 [221 P. 213]. De Funiak (Community Property §§ 189-190) defends this theory in part on the basis of old Spanish law, but the later American cases except the Pendleton case, *supra*, reject it as not recognized in and not in accord with the statutory provisons as to com-

munity property, which give the wife an interest in all such property acquired by either party as is community property according to statute until the marital community is terminated by death or judicial decree. (See *George* v. *Reynolds*, (Tex. Civ.App.) 53 S.W.2d 490, 493; *Beals* v. *Ares*, 25 N.M. 459 [185 P. 780, 793].) Although in California the spouses can change the character of their property from community to separate by their agreement, there is no indication in our code or in our decisions that a deserting wife can be deprived of her community interest against her will. To the contrary section 146, Civil Code, provides that in case a marriage is dissolved by decree of court on any other ground than that of adultery, incurable insanity or extreme cruelty, the community property shall be equally divided between the parties, thus preventing the penalizing of a spouse guilty of desertion only in his or her community property interest. (*Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65].) It is inconceivable that the Legislature should have intended that the courts would have no power to penalize a deserting spouse by taking from him or her any part of the community interest considered to have continued in existence until the decree, but that they would have power to punish him or her by a declaration that he or she had forfeited all of such interest by the act of desertion.

"It may also be pointed out that section 169, Civil Code, provides that when a wife lives separate from her husband her earnings and accumulations are her separate property but that no corresponding provision is made for the protection of a deserted husband. If such a provision would be desirable it would be the task of the Legislature to make it. Until this is done the deserted husband can find protection in the diligent institution of a divorce suit only." (The Supreme Court, without a dissenting vote, denied a hearing.)

The principle announced in the Randolph case was not new to the California law. As early as 1897 the Supreme Court in the leading case of *Spreckels* v. *Spreckels*, 116 Cal. 339, 342 [48 P. 228, 58 Am.St.Rep. 170, 36 L.R.A. 497], stated: "If the wife is living separate and apart from the husband, through her own fault, her earnings and accumulations are her own. Yet, if the husband during the same time accumulates a fortune, it is community property."

It is true that the Legislature in 1955 changed the rule of the Randolph case by amending section 175 of the Civil Code so as to provide that "the earnings of the hus-

band during the period of unjustified abandonment . . . are his separate property," but, obviously, that section is not retroactive.

When the Nevada decree was granted on July 18, 1953, the appellant and respondent became tenants in common in the community property. (*Taylor* v. *Taylor,* 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074].) Prior to that date the property was community property in which respondent's interest was "present, existing and equal." (Civ. Code, § 161a; *Cooke* v. *Cooke,* 65 Cal.App.2d 260 [150 P.2d 514].) The rights of the wife were vested. Such vested rights could not, constitutionally, be divested by the passage of section 175. (*Estate of Drishaus,* 199 Cal. 369 [249 P. 515]; *Estate of Thornton,* 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343].)

The contention of appellant that the court was without power to grant attorney's fees to respondent is also without merit. It is true that in *Hinson* v. *Hinson,* 100 Cal.App.2d 745 [224 P.2d 405], it was held that if a valid Nevada divorce was secured prior to the filing of the California action, attorney's fees could not be granted the California plaintiff, because a jurisdictional prerequisite for such allowance is the existence of a valid marriage existing when the California action was filed. (See also *Colbert* v. *Colbert,* 28 Cal.2d 276 [169 P.2d 633]; but see *Knox* v. *Knox,* 88 Cal.App.2d 666 [199 P.2d 766].) But in *Baldwin* v. *Baldwin,* 28 Cal. 2d 406 [170 P.2d 670], the Supreme Court held that in a proper case the trial court has power to award attorney's fees in a case where, as here, the California action was instituted prior to the Nevada decree, and the funds were necessary for the wife to prosecute an appeal from a judgment holding the Nevada decree valid. The rule of that case is here applicable. Here the California action was commenced on July 10, 1953. At that time the parties were legally married. The Nevada decree was not secured until July 18, 1953. After the Nevada decree was secured, respondent, in good faith, challenged its validity. Under such circumstances it was within the discretion of the trial court to award attorney's fees.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.