STATE of South Dakota, Plaintiff and Appellee,

v.

Mark ERICKSON, Defendant and Appellant.

No. 13326.

Supreme Court of South Dakota.

Argued Oct. 20, 1981.

Decided Jan. 27, 1982.

James E. McMahon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Sidney B. Strange of Strange & Strange, Sioux Falls, for defendant and appellant.

WOLLMAN, Chief Justice.

This is an appeal from a judgment of conviction that found appellant guilty of one count of conspiracy to distribute cocaine and two counts of aiding and abetting the distribution of cocaine. SDCL 22–3–8 and 22–42–2. The overt act alleged in the conspiracy count was the distribution of cocaine on two occasions by co-conspirator, Jeff Glodt, to Duane Dahl, a law enforcement officer. The aiding and abetting charges are based upon these same distributions. We affirm.

Jeff Glodt, the co-conspirator and accomplice, was the State's principal witness against appellant. Appellant and Glodt met in Mitchell in the latter part of April 1980. Glodt had been approached by a third party who told him that someone wanted to meet him. Glodt accompanied this person to a parking lot, where Glodt was introduced to appellant, who was sitting in his white Camaro automobile. After a discussion, appellant arranged to purchase cocaine from Glodt. He subsequently bought one gram. The quantity purchased would have been greater had the price been more reasonable. Appellant informed Glodt that he could secure less expensive cocaine from his Vermillion source, which he could pass on to Glodt.

Glodt next contacted appellant on May 2, 1980, when he phoned appellant at the latter's job at Stereo Town. Glodt was anticipating the arrival of cocaine from Vermillion, as appellant had indicated, and wanted to know if appellant had received it. As appellant was reluctant to discuss the matter over the phone, Glodt met him personally at his job. Appellant then informed Glodt that he would contact him when the Vermillion connection came through.

In the meantime, Glodt had arranged with drug informant Mike Thomas to sell two ounces of cocaine to Duane Dahl, the state drug agent named in the indictment. Glodt had hoped that appellant would be able to supply him with this quantity via his less expensive Vermillion source. As appellant had no cocaine to supply on May 2, Glodt was limited to selling only three grams to Dahl on May 3. This amount came from Glodt's on-going Rapid City source.

With Mike Thomas' assistance, Glodt spoke to Dahl several times by phone on May 4, 1980. They arranged for Dahl to purchase one-half pound of cocaine, the purchase to be handled through Glodt's Rapid City source.

The next day, May 5, appellant stopped by Glodt's residence and informed him that he had a quarter ounce for sale. Appellant told Glodt that he could furnish quantities and could provide the cocaine for Glodt to sell to Dahl. At this time Glodt thought that Dahl was Mike Thomas' older brother and so indicated to appellant. During the evening of this same day Glodt phoned Dahl and told him of the newly acquired quarter ounce from his Mitchell source. Glodt informed Dahl that his Mitchell source worked at Stereo Town and owned a black Blazer automobile and a white Camaro automobile. He also informed Dahl that his Mitchell source could supply cocaine in quantity. Glodt and Dahl set up a meeting for May 6, when Dahl could examine this quarter ounce Glodt had bought from appellant.

At the May 6 meeting Dahl examined and bought only one gram of the cocaine Glodt had purchased from appellant. Dahl told Glodt that he intended to stick to the arrangements they had already made for the purchase in Rapid City on May 8.

On the afternoon of May 7 Glodt gave appellant $2,300 in payment for an ounce of cocaine that appellant was to deliver to Glodt in the evening. Glodt then phoned Dahl to tell him that he had just bought an ounce from his Mitchell source and he would sell it to Dahl the next day when they met to go to Rapid City. In the meantime, at about 6:00 p. m. on May 7, Kevin Stahl sold one-quarter ounce of cocaine to appellant. Appellant later took Glodt for a drive in his white Camaro and gave Glodt an ounce of cocaine. Glodt again mentioned Dahl and the impending Rapid City deal.

On May 8, Dahl picked up Glodt for the trip to Rapid City. Glodt showed Dahl the ounce of cocaine he had purchased from appellant the day before. Dahl suggested that Glodt bring this ounce to Rapid City where all transactions could be handled at once. Present was yet another drug agent, Robert Lawton, who showed Glodt $20,000, which was to be used to buy the half-pound of cocaine waiting for them in Rapid City. They put this money and the ounce of cocaine Glodt had bought from appellant into a box in the trunk of the car. In Rapid City Glodt and others were arrested for distribution of cocaine.

On May 11 appellant told Kevin Stahl that he had had some dealings with Glodt but he was not involved in the Rapid City affair. At trial appellant admitted that he worked at Stereo Town, that he owned a Camaro and a Blazer, that he knew Kevin Stahl and Jeff Glodt, that he had been at Glodt's residence, that he had met with Glodt at Stereo Town, that he had bought cocaine from Stahl on May 7, and that he personally used cocaine.

■ Appellant first argues that SDCL 22–3–8,[1] the conspiracy statute, is void for vagueness and overbreadth. This statute was enacted in 1941 and follows the definition of conspiracy contained in the federal conspiracy statute. *State v. Henglefelt*, 72 S.D. 306, 33 N.W.2d 492 (1948). The federal statute, 18 U.S.C. § 371, has repeatedly been held constitutional. See, e.g., *United States v. Heck*, 499 F.2d 778 (9th Cir. 1974), cert. denied, 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974). In substance, 18 U.S.C. § 371 is identical to SDCL 22–3–8. This statute clearly sets forth a criminal offense constituting lawful notice to all citizens. We hold that SDCL 22–3–8 is constitutional.

■ The next issue is whether the trial court erred by denying appellant's motion to dismiss the conspiracy count of the indictment based on Wharton's Rule and the merger doctrine. In its most recent formulation, Wharton's Rule provides:

> An agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons . . . .
>
> In addition to adultery, the classic offenses envisaged by Wharton's Rule are incest, bigamy, and dueling. . . .

4 C. Torcia, Wharton's Criminal Law § 731, 545–46 (14th ed. 1981).

In *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the Supreme Court discussed the current utility of Wharton's Rule. It noted that traditionally, conspiracy and the completed offense have constituted separate crimes, in recognition of the understanding that a conspiracy poses dangers apart from the substantive offense. Accordingly, "[T]he Rule currently stands as an exception to the general principle that a conspiracy and the substantive offense that is its immediate end do not merge upon proof of the latter. . . . [I]t has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." 420 U.S. at 781–82, 95 S.Ct. at 1292, 43 L.Ed.2d at 625. The Court then held that Congress did not intend to allow Wharton's Rule to block a conviction for conspiracy to violate § 803(a) of the Organized Crime Control Act of 1970, 18 U.S.C. § 1955, even though that section was not applicable unless five or more persons operated an illegal gambling business.

In *United States v. Bommarito*, 524 F.2d 140 (2nd Cir. 1975), the court discussed Wharton's Rule in a context similar to that before us. Using the *Iannelli* analysis, that court found that:

> The structure and legislative history of the [Drug Abuse Prevention and Control Act] provide persuasive evidence that, because of the special dangers which conspiracies to distribute controlled drugs pose to society, Congress did intend that a conspiracy to violate the Act should constitute a separate crime in addition to the substantive offense.

524 F.2d at 143–44. It may be presumed that the South Dakota Legislature was equally as concerned about the special dangers that conspiracies to distribute controlled drugs pose to South Dakota citizens as was Congress with respect to the federal

---

1. SDCL 22 3 8 provides in part:

> If two or more persons conspire, either to commit any offense against the state of South Dakota . . . and one or more of the parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be guilty as follows:

> (1) If the conspiracy was to commit a felony, each party is guilty of a classified felony which is one classification less severe than the felony to be committed, but in no case shall the punishment for conspiracy to commit a felony be less than a Class 6 felony. . . .

statute. Following *Iannelli,* then, we conclude that had the South Dakota Legislature intended to foreclose prosecution of conspiracy cases for violation of SDCL 22–42–2, it would have made an explicit statement to that effect. Accordingly, we hold that the trial court correctly denied appellant's motion to dismiss the conspiracy count.

Nor did the merger doctrine mandate that the conspiracy count be dismissed. The United States Supreme Court in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), considered a situation where, as in this case, some overt acts charged in the conspiracy count were the same acts charged as offenses in the substantive counts, and where each of the substantive offenses was committed in furtherance of the conspiracy. The Court said, "[I]t is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. . . . The agreement to do an unlawful act is even then distinct from the doing of the act." 328 U.S. at 644, 66 S.Ct. at 1182, 90 L.Ed. at 1495 (footnote omitted). As this Court held in *State v. Anderberg,* 89 S.D. 75, 79–80, 228 N.W.2d 631, 634 (1975), "Being involved as an aider and abettor in the commission of a crime and being involved as a conspirator to commit the same crime are separate and distinct offenses." See also *State v. Carlson,* 79 S.D. 411, 112 N.W.2d 891 (1962). Conspiracy to distribute cocaine is thus a separate and distinct offense from aiding and abetting the distribution of the same cocaine. The trial court correctly denied appellant's motion to dismiss on this basis.

Finally, appellant argues that the trial court should have entered judgments of acquittal on all three counts since Glodt's testimony against appellant was not corroborated, the trial court having determined as a matter of law that Jeff Glodt was appellant's accomplice with respect to all three counts. SDCL 23A–22–8.[2]

We have never required that corroborative evidence be produced which, by itself, would sustain a conviction. *State v. Moellar,* 281 N.W.2d 271 (S.D.1979); *State v. Rauscher,* 267 N.W.2d 582 (S.D.1978). The requirement of corroboration is satisfied if such evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused. *State v. Moellar,* supra; *State v. Drapeau,* 45 S.D. 507, 189 N.W. 305 (1922). Corroborative evidence need not confirm every material fact testified to by the accomplice. *State v. Feuillerat,* 292 N.W.2d 326 (S.D.1980). The jury determines whether enough evidence of corroboration is presented. *State v. Feuillerat,* supra; *State v. Walsh,* 25 S.D. 30, 125 N.W. 295 (1910). The accused himself can provide the necessary corroboration. *State v. Feuillerat,* supra; *State v. Jochims,* 241 N.W.2d 25 (Iowa 1976).

We hold that Glodt's testimony was adequately corroborated. Appellant himself confirmed the place and time of his first meeting with Glodt. Appellant admitted that he paid Glodt visits at his home. Kevin Stahl, who was not an accomplice, testified that he had sold cocaine to appellant the same day appellant sold a larger quantity to Glodt. Further, Stahl testified that appellant had told him that Glodt and appellant had drug dealings prior to Glodt's arrest in Rapid City. Duane Dahl, the state drug agent, testified that Glodt gave him several details about the lifestyle of his Mitchell associate.

The testimony of these witnesses is circumstantial, but circumstantial evidence can satisfy the requirements of corroboration. *State v. Martin,* 287 N.W.2d 102 (S.D. 1980); *State v. Willers,* 75 S.D. 356, 64 N.W.2d 810 (1954). Further, this evidence shows that at or about the time the offense was committed, appellant and his accomplice were in close association. The evi-

2. SDCL 23A 22 8 provides:
   A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

dence of the close association between appellant and Glodt during the two-week period immediately preceding Glodt's arrest tends to connect appellant with the commission of the offenses charged. *State v. Schafer*, 297 N.W.2d 473 (S.D.1980); *State v. Moellar*, supra; *State v. Rauscher*, supra; *State v. Drapeau*, supra.

We conclude, therefore, that there was sufficient corroborating evidence, independent of the accomplice's testimony, connecting appellant with the commission of the crimes charged to satisfy SDCL 23A–22–8. Even though circumstantial in nature, when considered together it was sufficient to present a jury question.

We have reviewed the remaining issues raised and find them to be without merit. The judgment of conviction is affirmed.

All the Justices concur.