STATE of South Dakota, Plaintiff and Appellee,

v.

Robert REUTTER, Defendant and Appellant.

No. 14612.

Supreme Court of South Dakota.

Argued Jan. 11, 1985.

Decided Sept. 6, 1985.

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment of conviction that found appellant, Robert Reutter (Reutter), guilty of two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. SDCL 22-3-3, 22-42-2, and 22-3-8. We affirm.

While engaged in an enterprise to mine gold near Oroville, California, Reutter conceived a scheme to transport to and distribute cocaine in Minnehaha County, South Dakota. Reutter's plan was initially implemented during the period from January 1982 through March 1982 in conjunction with one John Soto, who was employed at Reutter's Oroville-based company, S & R Minerals. Reutter and Soto agreed that in exchange for payment from Reutter, Soto would obtain cocaine from a source in San Francisco and ship it to Reutter in Sioux Falls.

Although Reutter's activities in California consumed a considerable portion of his time in late 1981 and early 1982 he nevertheless retained Sioux Falls as his principal residence. Separated from his wife, Reutter lived in the home of Dr. Michael Kotas while in Sioux Falls.

In early 1982, David Trygstad, a lawyer and former law associate of Reutter's, began spending time at the Kotas home, ostensibly for social reasons. Cocaine was generally available during these visits and was used by both Reutter and Trygstad.

In late October or early November of 1982, Reutter informed Trygstad of his decision to distribute cocaine in the Sioux Falls area. These discussions took place at the Kotas residence. On two occasions in early November of 1982, Trygstad received limited quantities of cocaine from Reutter for resale. Trygstad solicited Rich Cole, his friend, sometimes business associate, and client, to retail the cocaine.

Cole arranged through a drug informant to sell cocaine to Robert Overturf, the state drug agent named in the indictment.

Agent Overturf first met Cole on November 4, 1982, at a Sioux Falls restaurant. They drove to Cole's apartment in Sioux Falls, where Cole contacted Trygstad by telephone. Overturf and Cole then proceeded to Trygstad's law office. While Overturf waited in the car, Cole entered Trygstad's office, returning moments later with a gram of cocaine. Cole remarked to Overturf that they had just missed a substantial amount of cocaine, but that Overturf was welcome to the gram so he might test and inspect it. They agreed to meet again.

On November 28, 1982, Overturf purchased from Cole approximately a quarter ounce of cocaine that Cole had obtained from Trygstad, who subsequently paid Reutter $700.00 for the cocaine sold to Overturf.

On December 24, 1982, Trygstad received an ounce of cocaine from Reutter. Trygstad in turn gave the cocaine to Cole, who later that evening sold half of it to Overturf for $1,400 cash. Cole then paid Trygstad, who thereafter paid Reutter an undetermined amount of money.

In early January of 1983, Overturf arranged to purchase a quarter pound of cocaine from Cole. Cole informed Trygstad, who then contacted Reutter by telephone. Reutter advised Trygstad that he would be in Nebraska on business and instructed him to discuss the deal with Dr. Kotas. Kotas and Trygstad met on Janu-

ary 6, 1983, at the Grain Bin Bar located in Sioux Falls. Kotas indicated that he would fly to San Francisco the following day to purchase a quarter pound of cocaine for Trygstad and return to Sioux Falls on the following day, January 8. On Sunday morning, January 9, Trygstad called Kotas from his office and stated that he needed the cocaine shortly after noon that day. Reutter delivered the cocaine to Trygstad that afternoon.

Trygstad and Cole met at a bar in Sioux Falls that same afternoon. Overturf arrived and was joined in his automobile by Cole. Cole produced a quarter pound of cocaine, and in return Overturf gave Cole $10,000 in specially marked bills. Cole returned to the bar, where he and Trygstad were arrested. At the time of his arrest, Trygstad had in his possession $9,600 of the $10,000 given to Cole by Overturf.

On January 12, 1983, Trygstad entered a plea of guilty to two counts of conspiracy to distribute cocaine. He then identified Reutter as his source of cocaine and stated that Reutter had indicated that his source of cocaine was based in California.

On July 27, 1983, Reutter and Kotas were indicted by a Minnehaha County Grand Jury. Their cases were later severed for trial.

## I.

### *Sufficiency of the Indictment*

Reutter first claims that he was victimized by an unconstitutional and unlawful broadening of the conspiracy count of the indictment. The indictment charged:

> That during a period of time between March 1, 1981, and January 9, 1983, in Minnehaha County, South Dakota, MICHAEL JOHN KOTAS and ROBERT REUTTER did commit the public offense of Conspiracy to Distribute a Controlled Substance (SDCL 22–42–2; 22–3–8; and 34–20B–2) in that MICHAEL JOHN KOTAS and ROBERT REUTTER did then and there conspire with DAVID J. TRYGSTAD (an uncharged co-conspira-

tor) to distribute cocaine, a derivative or preparation of coca leaves.

Reutter argues that because the indictment charges him with conspiracy to distribute cocaine only in Minnehaha County, the state should have been proscribed from presenting any evidence connecting him with drug related activities in California.

Reutter's claim rests in part on the fact that the overt acts alleged in the indictment refer solely to events occurring in Minnehaha County during the period from late October or early November 1982 to January 9, 1983.

In *State v. Bingen,* 326 N.W.2d 99, 100 (S.D.1982), we said:

> To be sufficient an indictment must (1) contain the elements of the offense charged and fairly inform the defendant of the charge against him; and (2) enable him to plead an acquittal of conviction in bar of future prosecutions for the same offense.

*See also State v. Sinnot,* 72 S.D. 100, 30 N.W.2d 455 (1947), *cert. denied* 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948); *United States v. Young,* 618 F.2d 1281 (8th Cir.1980). These requirements comport with those established by the United States Supreme Court. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Generally, a recitation of the statutory language itself in the indictment will satisfy the requirement of fairly informing the defendant of the charge against him. *State v. Bingen,* 326 N.W.2d at 100. Where this proves inadequate, the indictment must be supplemented with facts sufficient to put the accused on notice of the specific offense charged. *Hamling v. United States,* 418 U.S. at 117–18, 94 S.Ct. at 2907–08, 41 L.Ed.2d at 620, 621.

Although it must fall into compliance with the two-prong test set forth in *Bingen,* an indictment charging conspiracy need not be drafted with the same precision

required in an indictment for committing the substantive offense. *State v. Sinnot,* 72 S.D. at 104, 30 N.W.2d at 457; *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). All that is necessary in charging conspiracy is "certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit." *State v. Sinnot,* 72 S.D. at 104, 30 N.W.2d at 457; *Williamson v. United States,* 207 U.S. 425, 447, 28 S.Ct. 163, 171, 52 L.Ed.2d 278, 290 (1908); *see also Wong Tai v. United States, supra.*

Consistent with this principle, the United States Court of Appeals for the Seventh Circuit, in *United States v. Roman,* 728 F.2d 846 (7th Cir.1984), upheld an indictment charging the defendant and "other named persons" with conspiracy to distribute LSD over an eleven-year period of time (January 1, 1971 to May 26, 1982) in the "Central District of Illinois and elsewhere," over the defendant's contention that the indictment was overly broad and vague. Defendant in *Roman* was not identified as a participant in any of the ten overt acts alleged in the indictment. *Id.* at 848. Similarly, the United States Court of Appeals for the Ninth Circuit upheld an indictment which merely identified the location of the conspiracy as "the District of Oregon, and at various other places outside the District of Oregon" and additionally alleged overt acts that pertained only to events occurring on the date of defendant's arrest. *United States v. Brock,* 667 F.2d 1311 (9th Cir. 1982). *See also United States v. Scanlon,* 640 F.2d 144 (8th Cir.1981); *United States v. Montemayor,* 703 F.2d 109 (5th Cir. 1983); *United States v. Sedlak,* 720 F.2d 715 (1st Cir.1983).

■ Additionally, there is considerable authority for the proposition that the government is not limited to proof at trial of only those overt acts alleged in the indictment. *United States v. Johnson,* 575 F.2d 1347, 1357 (5th Cir.1978); *United States v. Morales,* 677 F.2d 1, 2 (1st Cir. 1982); *United States v. Bolzer,* 556 F.2d 948, 950 (9th Cir.1977); *United States v. Netterville,* 553 F.2d 903, 918 (5th Cir.

1977); *United States v. Harris,* 542 F.2d 1283, 1300 (7th Cir.1976). Nor must the government disclose to defendant prior to trial every overt act in furtherance of the conspiracy it intends to prove. *United States v. Sellers,* 603 F.2d 53, 56 (8th Cir. 1979), *vacated on other grounds,* 447 U.S. 932, 100 S.Ct. 3033, 65 L.Ed.2d 1127 (1980).

■ Accordingly, we conclude that the indictment was adequate to place Reutter on notice of the offense charged. It identified the elements of the offense; the code sections violated; the names of Reutter's co-conspirators; and the appropriate time span of the conspiracy.

The more important inquiry is whether the state surprised Reutter by introducing evidence of his activities in California, thereby preventing him from mounting an adequate defense.

■ In *State v. Blake,* we declared that "[a] variance between pleading and proof is not material in a criminal case unless it misleads the accused in making his defense...." 83 S.D. 359, 360, 159 N.W.2d 803, 804 (1968). The record before us does not compel the conclusion that Reutter was misled in preparing his defense.

State's witness Kim Soto, John Soto's wife, was interviewed in California by Reutter's investigator. Sandy Reininger, who acted as Reutter's secretary in Sioux Falls and testified to receiving packages on Reutter's behalf that had been mailed by John Soto from California, was listed on the indictment as a witness appearing before the grand jury. Reutter, of course, had access to the indictment and the accompanying list of witnesses. Although he was instructed to contact the court if he had any difficulty gaining access to the state's witnesses, he did not do so. Reutter's counsel was allowed to interview Trygstad in the penitentiary prior to trial. Reutter elected not to file a motion for discovery. We further note that Reutter did not request a continuance, despite his contention that immediately before trial the state sudddenly disclosed its intention to

present evidence of Reutter's scheme to obtain cocaine from California. Moreover, the record reveals that Reutter presented an elaborate alibi defense in an effort to refute the state's evidence.

Reutter also points out that the state failed to timely respond to the court's order granting in part his request for a bill of particulars. We have reviewed Reutter's specific requests set forth in the bill of particulars. Although we do not condone the state's failure to respond promptly, we reject Reutter's suggestion that this failure compounded his inability to prepare a defense.

 Reutter has made no showing that the state withheld any exculpatory or material evidence. *State v. Parker,* 263 N.W.2d 679, 682 (S.D.1978). A mere allegation by the accused that preparation of an effective defense was impeded by the late disclosure of evidence is insufficient to establish a constitutional violation. *Richards v. Solem,* 693 F.2d 760 (8th Cir.1982). *See also Ogden v. Wolff,* 522 F.2d 816 (8th Cir.1975); *United States v. Crow Dog,* 532 F.2d 1182 (8th Cir.1976); *United States v. Smith,* 552 F.2d 257 (8th Cir.1977).

The information sought by Reutter's bill of particulars pertained to the four counts of aiding and abetting the distribution of cocaine in Minnehaha County. As for the conspiracy count, Reutter sought information pertinent to the overt acts enumerated in the indictment. Reutter makes no claim that this particular evidence was concealed from him prior to trial. Indeed, the evidence Reutter claims he did not have access to prior to trial was the state's evidence of alleged purchases of cocaine made in California, a claim we reject. In short, Reutter has failed to show prejudice.

We hold that the indictment in the present case did not impair Reutter's Sixth Amendment right to a fair trial, nor did the state deprive Reutter of the opportunity to prepare an adequate defense by concealing evidence.

## II.

### Prior Bad Acts Testimony

Reutter next contends that the trial court erred in admitting the testimony of prosecution witness Kim Soto. Her testimony was offered as evidence of Reutter's intention and plan to acquire cocaine in California and subsequently distribute it in Minnehaha County.

Mrs. Soto testified that she first met Reutter in Oroville, California, in the summer of 1981 through her husband, John Soto, who at the time was an employee of Reutter's company, S & R Minerals. Reutter visited the Soto home in Oroville for the first time in early 1982 and on several occasions thereafter. During one visit, Mrs. Soto observed her husband and Reutter use cocaine. During another visit, occurring sometime between January and March of 1982, she overheard a conversation between her husband and Reutter, during which Reutter stated that he would send money to her husband, who in turn would mail cocaine to Reutter in Sioux Falls. John Soto's source of cocaine was located in San Francisco. In March 1982, Mrs. Soto observed Reutter give her husband $10,000. Mrs. Soto later witnessed her husband packaging cocaine in a Western Airlines speed pack, which he subsequently mailed from San Francisco. At trial, Mrs. Soto verified her husband's signature on several receipts from Western Airlines Speed Pack Service. These same receipts showed Sioux Falls as the point of origin and Reutter as "shipper." Mrs. Soto testified that her husband died on July 25, 1982.

Reutter contended that Mrs. Soto's testimony, even if true, had nothing to do with the specific crime charged. The trial court rejected Reutter's argument, admitting the testimony pursuant to SDCL 19–12–5, which states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportu-

nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Determining whether the trial court properly admitted Mrs. Soto's testimony involves two inquiries. First, whether the evidence is relevant to one of the stated exceptions in SDCL 19–12–5. *State v. Willis*, 370 N.W.2d 193, 197 (S.D.1985); *State v. Rose*, 324 N.W.2d 894, 895 (S.D. 1982). Secondly, if relevant, whether the prejudicial effect of the evidence substantially outweighs its probative value. *State v. Rose, supra; State v. Wedemann*, 339 N.W.2d 112, 115 (S.D.1983). *See* SDCL 19–12–3. The standard of review on appeal is whether the trial court abused its discretion in admitting the evidence. *State v. Willis, supra; State v. Pedde*, 334 N.W.2d 41, 43 (S.D.1983).

Evidence of other crimes, wrongs, or acts is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *State v. Johnson*, 316 N.W.2d 652, 654 (S.D.1982). We observed in *Johnson* that "[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value." *See also State v. Dace*, 333 N.W.2d 812, 816 (S.D.1983).

Mrs. Soto's testimony satisfies the test of relevancy in that it constituted evidence of Reutter's overall scheme to distribute cocaine in Minnehaha County, including the correlative planning and preparation necessary to carry it out.

The prejudicial effect of Mrs. Soto's testimony does not warrant the conclusion that the trial court abused its discretion in admitting it. In *State v. Holland*, 346 N.W.2d 302, 309 (S.D.1984), we stated:

Prejudice in SDCL 19–2–3 does not mean damage to the opponent's case that results from the legitimate probative face of the evidence; rather, it refutes to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means.

*See State v. Iron Shell*, 336 N.W.2d 372 (S.D.1983). Here, Mrs. Soto's testimony related to events closely connected to the offense charged. We conclude, therefore, that the trial court did not abuse its discretion in admitting this evidence.

The trial court proposed a cautionary instruction limiting the jury's consideration of Mrs. Soto's testimony to "whether it tends to show that the defendant had a scheme, design, system or plan to commit crimes of the sort with which he is now charged." The proposed instruction further continued "[y]ou are not required to consider this evidence, and whether you do so or not is a matter within your exclusive province. You may not consider it as tending to show in any other respect the defendant's guilt of any offense with which he is now charged in the proceedings."

On settlement of instructions, however, Reutter objected to this instruction, arguing that it would improperly allow the jury to decide a legal question. He proffered no alternative instruction, however, nor did he specify in what manner the proposed instruction was insufficient.

Reutter's vague objection to the proposed instruction coupled with his failure to offer an alternative instruction results in this issue not being properly preserved on appeal. *See* SDCL 15–6–51(b); *State v. Greene*, 86 S.D. 177, 183–86, 192 N.W.2d 712, 716–17 (1972); *State v. Poppenga*, 76 S.D. 592, 83 N.W.2d 518 (1957).

III.

*Corroboration of Accomplice Testimony*

Reutter's third contention is that the testimony of accomplices Trygstad and Cole was not sufficiently corroborated.

SDCL 23A–22–8 provides:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corrobo-

ration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

■ Accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction. *State v. Grooms,* 339 N.W.2d 318, 320 (S.D.1983); *State v. Erickson,* 315 N.W.2d 332, 335 (S.D.1982); *State v. Nelson,* 310 N.W.2d 777, 778 (S.D.1981); *State v. Feuillerat,* 292 N.W.2d 326, 330 (S.D.1980); *State v. Martin,* 287 N.W.2d 102, 103 (S.D.1980); *State v. Brown,* 285 N.W.2d 848, 850 (S.D.1979); *State v. Burkman,* 281 N.W.2d 436, 441 (S.D.1979); *State v. Moellar,* 281 N.W.2d 271, 273 (S.D.1979); *State v. Giulano,* 270 N.W.2d 33 (S.D.1978). The mandate of the statute is satisfied where the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused. *State v. Moellar, supra; State v. Erickson, supra.* There is no requirement that every material fact testified to by the accomplice be confirmed by corrobative evidence. *State v. Feuillerat, supra; State v. Erickson, supra.* The accused himself can provide the necessary corroboration. *State v. Erickson, supra.* Finally, whether corroboration is sufficient is a question for the jury. *State v. Erickson, supra, State v. Feuillerat, supra. See also State v. Wiegers,* 373 N.W.2d 1 (S.D.1985).

■ We hold that the testimony of Trygstad and Cole was sufficiently corroborated. Mrs. Soto's testimony provided evidence of Reutter's intention to orchestrate a distribution scheme in Minnehaha County. She further testified in part to Reutter's method of operation. Reutter corroborated Mrs. Soto's testimony that on several occasions in 1982 he did mail money to John Soto in Western Airlines speed packets from Sioux Falls to San Francisco. The state introduced documentation to confirm these transactions. Reutter acknowledged that he mailed packages on Western Airlines from San Francisco to Sioux Falls, South Dakota, at least one of which was picked up in Sioux Falls by Dr. Kotas at Reutter's request.

John Soto introduced Reutter and Kotas to one Gail Sholiton of San Francisco, who allegedly supplied the co-conspirators with cocaine, including the cocaine ultimately purchased by agent Overturf from Cole on January 9, 1983. Reutter acknowledged that John Soto introduced him to Gail Sholiton and that subsequently he maintained frequent contact with Sholiton by telephone and by traveling to San Francisco to visit her personally. Reutter introduced Dr. Kotas to Sholiton, with whom Kotas also remained in frequent contact, both in person and over the phone. Pam Schneider, a close friend and employee of Kotas, acknowledged that Kotas had informed her that Sholiton was his source of cocaine in California.

The evidence verifies Trygstad's testimony that on January 6, 1983, he met with Kotas at the Grain Bin Bar and that the following day Kotas flew to San Francisco, where he contacted Gail Sholiton. Kotas flew back to Sioux Falls one day later, January 8, 1983. This cocaine, Trygstad testified, was delivered to him by Reutter on Sunday morning, January 9, which was later sold that afternoon to Agent Overturf.

The evidence further establishes that throughout 1982 cocaine was generally present in the Kotas home during the time Reutter was staying with him. Reutter testified that Trygstad was a periodic guest at Kotas' residence and that on at least one occasion Reutter and Trygstad used a substance described by Reutter as "synthetic cocaine."

IV.

*Trial Court's Ruling Restricting Cross-Examination of State's Witness for Bias*

Reutter's fourth argument is that the trial court unduly restricted his cross-examination of prosecution witness Rich Cole. Specifically, Reutter claims that he was not allowed to adequately examine Cole for bias.

At the time his testimony was offered, Cole was serving two consecutive ten-year sentences in the South Dakota State Penitentiary on his conviction on two counts of distribution of cocaine. Cole entered his pleas of guilty in exchange for the state's agreement not to prosecute him as a habitual offender.

During opening argument Reutter's counsel stated that the evidence would show that Trygstad and Cole had obtained cocaine from sources other than Reutter, including one Frank Island. Island was generally characterized by Reutter's counsel as a major drug supplier in South Dakota.

Cole was questioned extensively on cross-examination about both his professional and social relationship with Island including the extent to which drugs were involved in these relationships. In an effort to establish that Cole was fearful of incriminating Island, Reutter's counsel asked Cole whether he had ever made a statement to representatives of the state in a matter unrelated to this criminal action that Frank Island was "cold blooded." The trial court sustained the state's objection on the ground that relevancy and materiality had not been established. Reutter argues that this ruling constitutes reversible error. We disagree.

■■■ The scope and extent of cross-examination is a matter within the sound discretion of the trial court. *State v. Wounded Head,* 305 N.W.2d 677, 680 (S.D. 1981). We will overturn the trial court's decision only upon a showing that this discretion has been abused. *State v. Brown,* 285 N.W.2d 843, 845 (S.D.1979). We have examined in detail Cole's testimony and find that Reutter was afforded considerable latitude in examining Cole with respect to his relationship with Island. Furthermore, Cole's testimony was not offered by the state as direct evidence of Reutter's involvement in the conspiracy. Rather, Cole testified that his sole source of cocaine was Trygstad; it was Trygstad's testimony that directly implicated Reutter. Cole was thus not a crucial witness in the state's case against Reutter. We are therefore satisfied that the trial court did not abuse its discretion by its ruling.

We note with interest that although Reutter argues that establishing Island's connection with Trygstad and Cole was central to his defense, he did not call Island as a witness although he had subpoenaed him.

## V.

### *Trial Court's Refusal to Grant Reutter's Motion to Dismiss or Change of Venue Due to Pre-trial Publicity*

Reutter moved for dismissal of the charges against him "because of unfair and prejudicial comments about his case" by Attorney General Mark Meierhenry. In lieu of dismissal, Reutter sought a change of venue.

Reutter's motion also requested that the trial court order state personnel "to discontinue attempting to affect the testimony of witnesses or to cause untrue and unfair publicity about defendant by the false suggestions and publication that defendant, Reutter was a party to other unnamed and unproven crimes."

Reutter's motion stemmed from events following the untimely death of named coconspirator Dr. Michael Kotas. Kotas was found dead in his home on the morning of January 27, 1984, approximately ten days before his scheduled trial. Later that day, Attorney General Mark Meierhenry appeared at a press conference in Sioux Falls at which he commented on an apparent plea bargain between the state and Kotas. In an article appearing in the Sioux Falls *Argus Leader* the following day, January 28, 1984, it was reported that Attorney General Meierhenry had stated at the press conference that Kotas was expected to enter a plea of guilty Friday (January 27). The article further reported that:

Although Meierhenry didn't indicate whether the plea bargain included having Kotas testify against others in the cocaine investigation, he said 'I would never accept a plea negotiation unless the

person who pled guilty bared his soul.' Meierhenry said he was unable to say what, if anything, Kotas could add to the investigation. 'Only a fool would say there's not some connection between Dr. Kotas and our ongoing cocaine investigation in South Dakota,' he said.

Reutter introduced this *Argus Leader* story, in addition to several others covering a period of time from January 28, 1984, to February 14, 1984, in support of his motion to dismiss. Reutter also introduced a videotape copy of four news broadcasts occurring from January 27, 1984 to February 16, 1984.

Reutter argues that although he was to be tried separately from Kotas, the Attorney General's public comments concerning an alleged plea bargain between the state and Kotas resulted in a denial of his right to receive a fair trial.

The trial court summarized its findings respecting the evidence submitted by Reutter at the pretrial hearing:

In the evidence produced at the hearing, only two references of significance mentioned any plea negotiations. The first is in the *Argus Leader* article of January 28 where a somewhat cryptic reference was made to plea negotiations pending at the time of Mr. Kotas' death. Several days later in the same publication, Kotas' local counsel issued a 'rebuttal' statement denying the existence of any plea negotiations. No reference was made in the t.v. newscast about plea negotiations. There was never any specific reference in the newspaper articles about terms or conditions of the plea negotiations. . . .

While the articles and news broadcasts were widespread, the court cannot find, upon a fair observation of them, that such reporting was anything but accurate. There was no statement on the possible guilt of this defendant. There does not appear to be any scheme or design to influence public opinion about the upcoming trial. Most of the reporting dealt with the circumstances surrounding Mr. Kotas' untimely demise, findings of law enforcement officials and

actual testimony from the coroner's inquest. No reporter even hinted at Mr. Reutter's possible guilt in any fashion prior to the present motion being filed. The content of that article merely paraphrases the content of the motion.

In view of its findings, the court concluded:

There has been no evidence produced that shows any impact upon this community which might prevent the defendant from receiving a fair trial. There were neither affidavits nor testimony from citizens of the county demonstrating any influence or bias caused by these remarks. No poll was produced to prove actual prejudice. *See State v. Marshall,* 264 N.W.2d 911 (S.D.1978). Community prejudice cannot be considered in abstract terms only, it must be proven to exist. Merely because prejudicial statements are made (the cause) does not show the statements were taken as true or that they caused a problem (the effect). . . . This court cannot find fault with any of the media coverages. All of it is a good example of proper reporting which preserves the right to report criminal proceedings while not infringing upon the defendant's right to a fair trial. Nor, although not condoned by the court, were the remarks by the Attorney General of such a nature as to preclude this defendant from receiving a fair trial. The defendant has not carried the necessary burden to prove otherwise. Citing *State v. Serl,* 269 N.W.2d 785 (S.D.1978).

We concur in the findings and conclusions of the trial court. The existence of pretrial publicity alone does not warrant the conclusion that the accused was denied a fair trial. *State v. Reed,* 313 N.W.2d 788, 789 (S.D.1981) (citing *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)). The burden rests with the accused to establish that an impartial trial is not possible in the face of pretrial publicity. *State v. Reiman,* 284 N.W.2d 860, 867 (S.D.1979). Furthermore, whether a change of venue will be granted is a matter within the sound discretion of the

trial court and we will not disturb the trial court's decision absent a showing that its discretion has been abused. *State v. Reiman, supra.*

■ Moreover, the voir dire examination is the better forum for ascertaining the existence of hostility towards the accused. *Id.* Reutter makes no claim that he was unable to remedy the effects of adverse pretrial publicity through this process. As we stated in *Reiman,* "the test is whether there is, in fact, prejudice in the minds of the inhabitants of the county sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial in the county." *Id.* at 867. *See State v. Meservey,* 53 S.D. 60, 220 N.W. 139 (1928).

■ We hold that the trial court properly refused Reutter's motion to dismiss and his request for change of venue.

## VI.

### *Intimidation of State Witnesses*

Reutter also sought a court order restraining the state from intimidating potential witnesses. At the hearing, Reutter requested a separate hearing outside the presence of the media to set forth his allegations. The trial court granted the in-camera hearing, but only for the limited purposes of making an offer of proof. Reutter claimed that certain state officials had made comments to two potential witnesses that prevented him from conducting a meaningful interview with them. Specifically, Reutter claims that the Attorney General's office attempted to influence the testimony of Pam Schneider and Mark Kotas following the death of Michael Kotas. Reutter further alleges that the Attorney General's office stated to Schneider and Kotas that Reutter had been implicated in at least five murders. Reutter stated that Schneider was specifically advised that she might be in danger from Reutter and was asked if she wanted to have protection.

Reutter requested a closed evidentiary hearing on the allegations, arguing that it would be detrimental to introduce testimony in the presence of the press. The trial court denied the motion. The trial court reasoned that any prejudice resulting from an open hearing could be dealt with by means of a change of venue, continuance, and proper voir dire. Reutter's counsel rejected these alternatives.

On appeal, Reutter claims that in addition to Schneider and Kotas, witnesses Joanne Becker, who was a California friend of Reutter's, and Mrs. Soto were also intimidated in a similar fashion by the Attorney General's office. Reutter argues that the Attorney General's actions resulted in a devastating bias on the part of these witnesses. With respect to the testimony of Pam Schneider, Mark Kotas, and Joanne Becker, we fail to find evidence in the record of "devastating bias." On direct examination by the state, Pam Schneider denied any knowledge of Reutter's involvement with cocaine. Similarly, Mark Kotas denied ever having seen Reutter use cocaine, testifying as well that his brother, Dr. Kotas, had never indicated to him that he was involved with Reutter in the use or distribution of cocaine. In fact, on cross-examination by Reutter's counsel, Mark Kotas stated that Reutter was a close friend and that without Reutter's aid and assistance he would never have been able to endure the ordeal of his brother's death and impending trial. The record also indicates that Mark Kotas dined with Reutter on the eve of his trial. Joanne Becker testified that during her relationship with Reutter she had never heard any talk about nor seen any narcotics or drugs.

Of the four witnesses who allegedly were intimated by the state, Mrs. Soto was the only one to directly link Reutter to cocaine. Prior to trial she was confronted without warning at her place of employment by defense investigator Tim Malloy. Mrs. Soto told Malloy that she did not know any thing about Reutter's involvement with cocaine and that she did not

want to be involved. The record reveals that Mrs. Soto was highly distressed at this meeting, her distress perhaps due in part to the fact that Malloy confronted her at her place of employment in front of her co-workers.

The state denies any attempt to influence Mrs. Soto's testimony and offered to make its investigation available for Reutter's examination. Reutter elected not to avail himself of this offer.

Mrs. Soto admitted on cross-examination that she had previously denied any knowledge of Reutter's involvement.

Furthermore notwithstanding the trial court's directive that he should advise the court of any witness-related problems, Reutter made no mention to the court of Mrs. Soto.

 We have recently held that we will not countenance attempts by the state to interfere with a defendant's constitutional right to call witnesses on his behalf. *State v. Wiegers, supra.* Upon a proper showing, a defendant is entitled to have the trial court make findings with respect to a claim of witness intimidation. *Id.*

In *United States v. Wilson,* 715 F.2d 1164 (7th Cir.1983), the trial court's refusal to grant an evidentiary hearing on defendant's allegations of prosecutorial misconduct was upheld. · Defendant in *Wilson* alleged to the trial court that the prosecution had intimidated potential witnesses in an attempt to gain favorable testimony. The trial court refused the motion to dismiss, in addition to refusing to grant an evidentiary hearing, because defense counsel offered no factual support. *Id.* at 1170.

On appeal, the Court of Appeals for the Seventh Circuit held:

If there was a factual basis for defendant's allegations of prosecutorial misconduct, that factual basis should have been presented to the trial court. The defendants were afforded an opportunity to present allegations sufficient to warrant an evidentiary hearing. It is no basis for relief on appeal that defendants failed to avail themselves of that opportunity.

715 F.2d at 1170.

Reutter made nothing more than mere allegations to the trial court at the in-camera hearing. The trial court noted that Reutter had failed to include any factual statements with the motion. Nevertheless, the court offered to hold an evidentiary hearing on the allegations, but Reutter refused.

 The trial court acted properly in refusing to close the courtroom to the public on the basis of mere allegations. Moreover, the trial court granted the specific relief requested in Reutter's motion.

 Reutter did nothing more than to make an allegation that finds no support in the record. The testimony of Schneider, Kotas, and Becker stands in direct contradiction to Reutter's assertion that the state prejudiced these witnesses against him. If anything, their testimony harmed the state.

 Reutter did not approach the trial court with respect to the alleged intimidation of Mrs. Soto. At the hearing on this motion, Reutter referred only to Schneider and Kotas. The transcript of the hearing shows that the trial court instructed Reutter to bring to its attention any further problems concerning state witnesses. Reutter never again approached the court, nor was the matter pursued on cross-examination of any of the witnesses.

Because there is no factual support in the record supporting Reutter's allegations of witness intimidation, we find no evidence of prejudice.

We have considered each of these remaining issues raised in Reutter's brief and conclude that they present no issue of reversible error.

The judgment is affirmed.

MORGAN, J., concurs.

FOSHEIM, C.J., and WUEST, Acting J., concur in result.

HENDERSON, J., dissents without formal opinion.

FOSHEIM, Chief Justice (concurring in result).

I concur with the majority opinion on Issues I., II., IV., V., and VI., and with the result on Issue III. The testimony of accomplices Trygstad and Cole was sufficiently corroborated. However, the role of the jury under SDCL 23A–22–8 is overstated and could send a misleading signal to the trial courts.

Under SDCL 23A–22–8, a defendant may not be convicted by the testimony of an accomplice unless it is corroborated by evidence which does more than show the commission of the offense, or the circumstances thereof. The degree of evidence sufficient to corroborate the testimony of an accomplice is an ultimate question of fact for the jury. *See, e.g., State v. Erickson,* 315 N.W.2d 332, 335 (S.D.1982) and *State v. Walsh,* 25 S.D. 30, 125 N.W. 295 (1910). The trial judge, however, must first determine as a matter of law that competent corroborated evidence is present before the issue can be presented to the jury. The jury then determines the weight thereof. *See, e.g., State v. Doss,* 355 N.W.2d 874 (Iowa 1984). *See also People v. Cooks,* 190 Cal.Rptr. 211, 141 Cal.App.2d 224 (Cal.Ct. App.1983), *People v. Jones,* 76 A.D.2d 1007, 429 N.Y.S.2d 775 (N.Y.App.Div.1980). The initial role of the trial judge is necessary before the function of the jury is activated. The language of the majority opinion indicates that the entire procedure is the exclusive prerogative of the jury.