[Civ. No. 15432.   First Dist., Div. Two.   June 22, 1953.]

IVY L. RANDOLPH, Appellant, v. OLGA RANDOLPH, Respondent.

Forrest E. Macomber and Gordon J. Aulik for Appellant.

Gilbert D. Calden and M. F. Hallmark for Respondent.

NOURSE, P. J.—Plaintiff sued for divorce on the grounds of his wife's desertion and cruelty. The wife cross-complained asking for separate maintenance. Judgment was entered for the husband on the ground of wilful desertion and against the wife on her cross-complaint. The husband appeals from that portion of the judgment which awards the wife $17,155.62 as her half of the community property of the parties.

·The parties were married in June, 1926, and from then on lived with the husband's mother in Stockton. A daughter was born there on April 6, 1927. On December 26, 1928, the wife left with the child and moved to her mother's place in Oakland. Since then the parties lived separate, the wife with the daughter in Oakland, the husband with his mother in Stockton.

Appellant's primary contention is that by so abandoning her husband the wife terminated the marital community and thereby lost all benefits incident to her marital status or was estopped from claiming them; he relies mainly on *Pendleton* v. *Brown,* 25 Ariz. 604 [221 P. 213]. De Funiak (Community Property §§ 189-190) defends this theory in part on the basis of old Spanish law, but the later American cases except the Pendleton case, *supra,* reject it as not recognized in and not in accord with the statutory provisions as to community property, which give the wife an interest in all such property acquired by either party as is community property according to statute until the marital community is terminated by death or judicial decree. (See *George* v. *Reynolds,* (Tex.Civ.App.) 53 S.W.2d 490, 493; *Beals* v. *Ares,* 25 N.M. 459 [185 P. 780, 793].) ▇ Although in California the spouses can change the character of their property from community to separate by their agreement, there is no indication in our code or in our decisions that a deserting wife can be deprived of her community interest against her will. To the contrary section 146, Civil Code, provides that in case a marriage is dissolved by decree of court on any other ground than that of adultery, incurable insanity or extreme cruelty, the community property shall be equally divided between the parties, thus preventing the penalizing of a spouse guilty of desertion only in his or her community property interest. (*Tipton* v.

*Tipton,* 209 Cal. 443 [288 P. 65].) It is inconceivable that the Legislature should have intended that the courts would have no power to penalize a deserting spouse by taking from him or her any part of the community interest considered to have continued in existence until the decree, but that they would have power to punish him or her by a declaration that he or she had forfeited all of such interest by the act of desertion.

It may also be pointed out that section 169, Civil Code, provides that when a wife lives separate from her husband her earnings and accumulations are her separate property but that no corresponding provision is made for the protection of a deserted husband. If such a provision would be desirable it would be the task of the Legislature to make it. Until this is done the deserted husband can find protection in the diligent institution of a divorce suit only.

The Pendleton case, *supra,* can be distinguished on its facts because in that case there was not only desertion by the wife but also open living in adultery and an agreement of separation and division of property which could be construed as a voluntary relinquishment by her of all her community interest. Moreover the case has never been followed during the 30 years which passed since its decision.

Except for the general contentions rejected above, appellant complains, with respect to the several items of community property stated and divided by the court, only of the decision as to his floral business. He had acquired a half interest in it in 1920, paying $2,500 for it. After his marriage he continued to work full time in it. In 1941 he acquired the other half interest for $6,250. Appellant borrowed the money required to take over the second half interest, $3,250 from a bank and an equal amount from his mother. At the time of the trial the bank loan had been fully repaid. No payment had been made on principal or interest of the mother's loan. There were received in evidence a "statement of operations" of the floral company as of December 31, 1949, showing a total capital (net worth) of $20,011.61 and a statement of financial condition of said company as of December 31, 1950, annexed to appellant's income tax return over 1950, showing a net worth of $12,820.69. Both statements had been drawn up by the same certified public accountant. This accountant testified at the trial and there compared the two statements. Both he and the appellant testified that the decrease resulted from the fact that in the earlier statement was included a special deposit of $4,000 from appellant's personal account which was with-

drawn prior to the date of the second statement and further from loss in business and withdrawals for living expenses. Appellant moreover testified that the value of the business at the time of the trial was approximately $12,000 and that the amount of $4,000 withdrawn had become part of the assets he owned over and above the business, which assets he enumerated and which the court included in accordance with said testimony in its statement of all assets to be divided. The court adopted as value of the business $20,011.61, the net capital according to the statement as of December 31, 1949. Of this the court considered an amount of $6,933, being appellant's original investment of $2,500 plus 7 per cent interest, as appellant's separate interest. From the balance $5,120 was deducted for the loan given by appellant's mother with the agreed interest of 7 per cent resulting in a net community interest in the floral business of $7,958.61.

As against this calculation appellant assigns three errors: considering the wife's absence all earnings and accumulations of the business, in which appellant invested his separate property and not only the amount invested plus interest should have been considered his separate property; at any rate the half interest of the business acquired by means of loans in 1941 should have been so considered (over and above the original investment of $2,500 plus interest) and finally the total value of the business should have been fixed at $12,820.69 instead of $20,011.61.

The first two contentions are without merit. ■ The usual method of determining the value of a husband's interest in a business in which he works and in which he also uses his separate property is to allow the husband the amount so invested by him with interest at the usual rate for well secured investments; profits or accruals in excess of that amount are then considered community property as attributable to the husband's personal labor, ability, energy and character (*Pereira* v. *Pereira*, 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880]; *Stice* v. *Stice*, 81 Cal.App.2d 792, 796 [185 P.2d 402]; *Berry* v. *Berry*, 117 Cal.App.2d 624, 629 [256 P.2d 646]). Only when the profits and accruals actually attributable to the separate property are proved to differ from such interest rate (as in the Berry case, *supra*, and in *Cozzi* v. *Cozzi*, 81 Cal.App.2d 229 [183 P.2d 739] cited by appellant), is there reason to depart from this system. No such proof was offered here. Therefore the usual system was correctly applied here to the original investment of $2,500.

The desertion by the wife is not relevant in this respect; on the grounds stated before it does not influence her community property rights.

The court correctly abstained from deciding whether the funds received as loans were separate or community property because under the circumstances of this case it does not make any difference. Even if the funds of the loans had become appellant's separate property the usual method described above should have been applied to find the separate interest in the business acquired by appellant because of these funds. He would then only have received the principals of these loans with the usual interest and he received all he could be entitled to in this respect when the bank loan was paid back with interest and the loan of his mother with 7 per cent interest deducted from the value of the floral business in calculating the community interest in it.

However we cannot uphold the evaluation of the floral business at $20,011.61, the net worth according to the statement as of December 31, 1949. There was no conflict in the evidence as to the value of the business. The evidence showing that the net worth as of December 31, 1950, was $12,820.69 was of exactly the same kind as the evidence as to the net worth as of December 31, 1949, and did not conflict with it. Evidently the value of property to be divided must be taken as of a date as near as possible to the date of the dissolution of the marital community. Moreover according to the uncontradicted evidence by taking the value of the business in accordance with the statement as of December 31, 1949, and the assets outside the business as they were at the time of the trial an amount of $4,000 was counted twice to appellant's detriment. On the basis of the evidence available the value of the business must be placed at $12,820.69.

Insofar as the judgment is based on the evaluation of appellant's floral business at $20,011.61 it is reversed with directions to the trial court to change this value to $12,820.69 and to amend accordingly the calculation of defendant's half interest in the community property and the community property awarded to her. In all other respects the judgment is affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 22, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1953.