[Civ. No. 44332. Second Dist., Div. Five. Feb. 19, 1975.]

In re the Marriage of LOUIS J. and DIANA L. IMPERATO.
LOUIS J. IMPERATO, Appellant, v.
DIANA L. IMPERATO, Respondent.

## COUNSEL

Moore & Myers and Kenneth L. Harvey for Appellant.

DeMarco, Barger, Beral & Pierno, Burkley & Moore, Robert L. Weiner and Kent R. Keller, for Respondent.

## OPINION

**HASTINGS, J.—**

### STATEMENT OF FACTS

Louis J. Imperato (husband), appellant, and Diana L. Imperato (wife), respondent, were married on June 27, 1959, in Phoenix, Arizona. They subsequently moved to California where they lived together with their two minor children until December 30, 1971, when they separated. The children stayed with husband.

On July 10, 1969, Personalized Data Delivery Service (PDD) was incorporated. It specialized in data processing delivery. The corporation was actually an extension of a partnership between husband and his father, with husband becoming the sole shareholder, president and manager thereof. On the date of the separation, PDD had a net worth of $1,665.85. Husband continued to operate the corporation after separation, and on June 30, 1973, PDD had a net worth of $17,614.26. Trial was held on August 22, 1973. The trial court ruled the community property would be valued as of June 30, 1973, the date closest to the date of trial for which proof of value existed.[1] It was agreed husband would retain the business and pay wife her one-half interest therein. Husband argued the business should be valued as of date of separation.

---

[1] The parties stipulated that PDD was community property.

ISSUES

1. In a marital dissolution action, should community property be valued as of date of separation or as near to date of trial as reasonably practicable?

2. Is PDD's appreciation in value between the dates of separation and trial the "earnings" or "accumulations" of husband for purposes of Civil Code section 5118?

ARGUMENT

1. The 1971 amendment to section 5118[2] of the Civil Code provides that the earnings and accumulations of a spouse, while living separate and apart from the other spouse, are the separate property of the spouse. Prior to said amendment, the earnings and accumulations of the wife were treated as her separate property, while the husband's were not. (The Family Law Act became effective Jan. 1, 1970, and § 5118 adopted in full the language of former § 169.)

This change, husband urges, reflects legislative intent that community property should be valued as of the date of separation. His argument is based on a statement found in *Randolph* v. *Randolph,* 118 Cal.App.2d 584 [258 P.2d 547]. In that case, there was almost a 20-year period of separation, during which time the husband operated a floral business. The court held that valuation of the business must be taken on a date as near as possible to the date of dissolution of the marital community, but it said on page 586: "It may also be pointed out that section 169, Civil Code, provides that when a wife lives separate from her husband her earnings and accumulations are her separate property but that no corresponding provision is made for the protection of a deserted husband. If such a provision would be desirable it would be the task of the Legislature to make it. Until this is done the deserted husband can find protection in the diligent institution of a divorce suit only."

Husband claims the Legislature finally responded to the invitation of the *Randolph* court when it amended section 5118 to its present form. He further states: " ' . . . living separate and apart . . .' refers to that

---

[2]Civil Code, section 5118 states: "The earnings and accumulations of a spouse and the minor children living with, or in the custody of, the spouse, while living separate and apart from the other spouse, are the separate property of the spouse." (Effective Mar. 4, 1972.)

condition when spouses have come to a parting of the ways with no present intention of resuming marital relations. (*Makeig* v. *United Security Bk. & T. Co.* (1931) 112 Cal.App. 138 [296 P. 673].)" In light of the amendment, and the legal meaning given to the words "living separate and apart," husband contends logic would seem to dictate that valuation of the community property should be made at date of separation.[3] This date is particularly appropriate, he asserts, when it is the effort of one spouse that has caused an increase in valuation of a community asset, and this person should receive the increase as his or her separate property because division of the property equally at the higher valuation unfairly benefits the other spouse.[4]

While this appears to be a case of first impression on the theory propounded by husband, it is not the first case to consider the amendment to section 5118. In *In Re Marriage of Lopez*, 38 Cal.App.3d 93 [113 Cal.Rptr. 58], the court said at page 110: "Asset values and liabilities should be determined as near to the date of trial as reasonably practicable, (*Randolph* v. *Randolph* (1953) 118 Cal.App.2d 584 [258 P.2d 547]), *with the reservation, however, that since the enactment of Civil Code section 5118, effective March 4, 1972, any portion of the law practice assets including goodwill which are attributable to the earnings and accumulations of a spouse living separate and apart are the separate property of the spouse earning or accumulating the same. This could be significant where the earnings of a professional person are substantial and the time lapse from separation to trial is considerable.*" (Italics added.) The opinion reaffirms that the valuation date should be at date of trial or close thereto, but recognizes that both spouses keep their earnings and accumulations as their separate property after separation. If the earnings of a spouse in some manner increase the value of a community asset, the court must then determine what portion of the asset is community property and what portion is separate property. This is the only logical application to be given to the amendment. Valuation on date of separation is important only when it is used in conjunction with the final valuation for apportioning community and separate property. As we understand

---

[3]The date of separation here was December 30, 1971. At that time section 5118 provided that only wife's earnings and accumulations were separate. Until the effective date of the amendment (Mar. 4, 1972), husband's earnings were still community property. Husband failed to note this item in his argument.

[4]In the present case, husband had custody of the children during separation. He places great emphasis on this fact, claiming that use of the trial date for valuation purposes will injure the children. He rationalizes that the working spouse, not wishing to benefit the other spouse, will permit a community property business to deteriorate, thereby causing the children to suffer due to a reduction in the family income.

husband's argument, community property must be valued as of date of separation with all of the increase in value subsequent thereto passing to the spouse that devoted time and effort to its preservation. This formula overlooks the inherent growth factor found in many assets, investment and re-investment of capital, market fluctuations, and numerous other components that can increase the value of most assets. Nor does husband consider the issue of loss in value often caused for various reasons. If his theory is adopted, logic compels the conclusion that the spouse devoting time to the asset must also stand the loss. In many situations this also would be very unfair.

The date for valuation of assets as stated in *Randolph* is not new in California, and has consistently been followed. (See *Ottinger* v. *Ottinger,* 141 Cal.App.2d 220, 224 [296 P.2d 347].) Section 5118, as it now reads, does not change the basic concept behind the rule. It merely takes the income and accumulations of the spouses out of "community property." Without further legislative expression, *Lopez, supra,* properly states how the section must be applied in apportioning community assets that have increased in value after separation of the parties.

2. ▇▇▇ Husband next argues that if the date of separation is not the proper valuation date, in this case the increase in net worth should be considered as earnings or accumulations within the meaning of section 5118. He reasons that he was the sole stockholder[5] of PDD and that he presented evidence to show that the corporate entity was nothing more than a style or business name, and therefore should be treated as a sole proprietorship for determining the rights of the parties in the business, after separation.

▇▇ The word "earnings" is broader in scope than "wages" and "salary." It can encompass income derived from carrying on a business as a sole proprietor where the earnings are the fruit or award for labor and services without the aid of capital. In *Romanchek* v. *Romanchek,* 248 Cal.App.2d 337 [56 Cal.Rptr. 360], the wife owned and operated as a sole proprietorship a school in French design. This division, on page 342, said: "The school was small, and its activities consisted of plaintiff's teaching, designing, pattern making, and the like. Plaintiff was 'very active' and worked at the school 'all the time' as its sole worker. The income derived from this school resulted from the personal character, ability, energy and capacity of the plaintiff, and was community property

---

[5]He does not refer to his wife as a stockholder in his brief, although of course she is by reason of her community interest.

while the parties lived together. (Civ. Code, § 146; *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880].) Until December of 1959 the parties lived together as husband and wife.

"From late 1959 until some time in early 1962 the parties lived separate and apart. During this period plaintiff's school income was her separate property."

In contrast, the earnings of a corporation are not, generally speaking, the earnings of the individual stockholder or stockholders, but are "profits" of the corporation to be distributed usually in the form of dividends. A stockholder-employee takes his earnings in salary, bonuses and other forms of benefits. ▆▆ Husband testified he paid himself a salary from the business during the period of separation, and the trial court considered this income as his total earnings. It was for this reason that husband argued that the court should disregard the corporate entity and treat the business as a sole proprietorship, as this would more realistically determine his earnings. The record indicates an effort by husband to place into evidence facts that would establish his *alter ego* theory. He presented checks drawn from both his personal bank account and PDD's bank account which were used to pay the personal expenses of the wife.[6] But it is apparent from the record that the court felt from the beginning of the trial that it was bound by the *Randolph* rule and other evidence was ruled inadmissible that would have been pertinent to this issue. In fairness to the trial court, *Lopez, supra,* had not been published at time of trial; thus, there was no direct decisional law to guide the court on this matter.

In the case at bar, the conflicting methods of the apportionment formulas used in the landmark cases of *Pereira* and *Van Camp*[7] would be

---

[6]See *Schoenberg* v. *Romike Properties,* 251 Cal.App.2d 154 [59 Cal.Rptr. 359], where husband and wife were sole stockholders and wrote checks for their personal expenses from the corporation bank account. The court considered this as important evidence that the corporation was the *alter ego* of husband and wife.

[7]Over the years our courts have evolved two quite distinct, alternative approaches to allocating earnings between separate and community income. One method of apportionment, first applied in *Pereira* v. *Pereira* (1909) 156 Cal. 1, 7 [103 P. 488] and commonly referred to as the *Pereira* approach, "is to allocate a fair return on the [husband's separate property] investment [as separate income] and to allocate any excess to the community property as arising from the husband's efforts." (*Estate of Neilson* 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745].) The alternative apportionment approach, which traces its derivation to *Van Camp* v. *Van Camp,* 53 Cal.App. 17, 27-28 [199 P. 885], is " 'to determine the reasonable value of the husband's services . . ., allocate that amount as community property, and treat the balance as separate property attributable to the

applied in reverse. In those cases, the husband owned separate property but devoted his community time after marriage to managing and preserving the property. Here, we have community property acquired during marriage, and if the facts justify apportionment we seek to allocate increases of the community property occurring after separation into separate property. Assuming the trial court treats PDD as a sole proprietorship, the *Pereira* approach would allocate a fair return of the increase to the community property and the excess would be husband's separate property. The *Van Camp* formula would determine the reasonable value of husband's services (less the draws or salary taken) and allocate this additional sum, if any, to husband as his separate property and the balance of the increase to community property. We do not speculate on the formula to be used here.[8] If the trial court, after hearing the evidence, disregards the corporate entity, it must apply the theory that is deemed most appropriate. As stated in *Beam* v. *Bank of America, supra,* 6 Cal.3d 12, 18: " 'In making such apportionment between separate and community property our courts have developed no precise criterion or fixed standard, but have endeavored to adopt that yardstick which is most appropriate and equitable in a particular situation . . . depending on whether the character of the capital investment in the separate property or the personal activity, ability, and capacity of the spouse is the chief contributing factor in the realization of income and profits [citations] . . . [Par.] In applying this principle of apportionment the court is not bound either to adopt a predetermined percentage as a fair return on business capital which is separate property [the *Pereira* approach] nor need it limit the community interest only to [a] salary fixed as the reward for a spouse's service [the *Van Camp* method] but may select [whichever] formula will achieve substantial justice between the parties. [Citations.]' *(Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 599-600 [250 P.2d 730]."

We are not unaware of the rule that an incorporator should be precluded from ignoring his own deliberately chosen corporate form.[9] (6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 15, p. 4327.) However, there are numerous exceptions. California recognized one in *Citizens State Bank* v. *Gentry,* 20 Cal.App.2d 415, 419 [67 P.2d 364],

---

normal earnings of the [separate estate].' " *(Beam* v. *Bank of America,* 6 Cal.3d 12, 18 [98 Cal.Rptr. 137, 490 P.2d 257].)

[8]As stated earlier, March 4, 1972, would be the first valuation date of the community property. However, it is left to the trial court's discretion to use a new valuation of PDD as of this date, or use a date as near to this date as is reasonably practical.

[9]Stated differently, a sole stockholder is estopped to deny the validity of his own corporation.

where a contractor agreed to build for defendant and, while performing, his state license expired. Prior to expiration he had incorporated his business and renewed his license in the corporation name. Defendant refused to pay for work done while the contractor was unlicensed. It was held that the contractor was the controlling factor in the corporation, and the separate entity would be disregarded to permit the finding that he was licensed.

More in point is the statement found in *Urschel* v. *Stone,* 198 Miss. 105 [21 So.2d 466], that "[t]here are times when the fiction of corporate entity is to be ignored, especially when, as here, the transactions are between the parties as stockholders and themselves as individuals. (18 C.J.S., Corporations § 6.)" And in *Seaboard Air Line R. Co.* v. *Atlantic Coast Line R. Co.,* 240 N.C. 495 [82 S.E.2d 771], the court disregarded the corporate entity in a lawsuit between stockholders. In commenting on the case in 68 Harvard Law Review 541-542, the author opined that the corporate structure should not be disregarded where the rights of creditors or other third parties might be adversely affected. He agreed, however, that the court was correct in piercing the corporate veil in order to settle the rights of the parties *inter se* when the evidence sustained the fact that the parties did not intend to limit themselves to corporate procedures in the management of the corporate property but used it merely as a convenient device.

The above cases illustrate the right of the courts to disregard the corporate entity at the urging of a stockholder in special situations, providing the facts support the *alter ego* theory. We believe a special situation exists when a husband and wife who are the sole stockholders of a corporation are dissolving their marriage and the other factors mentioned exist. One reason for justifying the *alter ego* doctrine is that it prevents injustice. If no third parties are affected, and the husband and wife have not treated the corporation as a separate entity, logic and fairness would permit the court to disregard the corporate entity when evidence offered by either party justifies such a finding, and it would enable a fair apportionment of the property.

We reiterate that we are not satisfied that the trial court gave due consideration to the *alter ego* theory and its effect on this case as expounded here. We believe husband was precluded from presenting all of his evidence on this issue. For this reason, the judgment is reversed

and remanded to the trial court for the sole purpose of determining the issues as outlined in this opinion.

Kaus, P. J., and Ashby, J., concurred.