JEAN THATCHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CURRIER H. THATCHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thatcher v. Commissioner
Docket Nos. 3086-86, 4294-86.
United States Tax Court
T.C. Memo 1988-537; 1988 Tax Ct. Memo LEXIS 566; 56 T.C.M. (CCH) 707; T.C.M. (RIA) 88537; November 21, 1988. Stephen Charles Jones, for petitioner Jean Thatcher. Robert C. Summers, for petitioner Currier Thatcher. Frank Bailey, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND *567 OPINION FAY, Judge: In separate notice of deficiency, respondent determined a deficiency in petitioner Jean Thatcher's 1981 Federal income tax in the amount of $ 12,850 and a deficiency in petitioner Currier Thatcher's 1981 Federal income tax in the amount of $ 14,226. After concessions, the issues for decision are: (1) What amount of the net income of Allied Dental Laboratory, if any, represents petitioners' community income; and, (2) if any amount of such income does represent community income, whether, pursuant to section 66(c), [1] petitioner Jean Thatcher is relieved of liability for income tax on any of such community income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners filed separate Federal income tax returns for 1981, the year at issue, and resided in Pomona, California, at the time they filed their *568 petitions in these consolidated cases. In 1981, petitioner Currier Thatcher ("Mr. Thatcher") managed and worked full-time as a dental technician for Allied Dental Laboratory ("Allied"), a sole proprietorship he established in 1957. In 1981, Mr. Thatcher and the five dental technicians he employed performed a wide range of dental services, including the manufacturing of false teeth for the patients of dentists in the Pomona Valley area. Mr. Thatcher had 35 years of experience as a dental technician and also had a very good reputation with the dentists in the community in 1981. Mr. Thatcher's sole proprietorship held income-producing community assets that were a factor in generating Mr. Thatcher's sole proprietorship income. The community assets included various ovens and other miscellaneous machinery and equipment which were used in the process of manufacturing false teeth and other items. On September 5, 1980, after 31 years of marriage, petitioner Jean Thatcher ("Mrs. Thatcher") filed a petition for legal separation from Mr. Thatcher. For all of 1981, Mr. Thatcher and Mrs. Thatcher were living separate and apart. On June 22, 1982, Mr. Thatcher and Mrs. Thatcher executed *569 a Marital Settlement Agreement (the "Agreement"), the purpose of which was to divide all of petitioners' community and separate assets and provide for alimony to Mr. Thatcher. In negotiating the Agreement, both petitioners and their respective divorce attorneys recognized that Mr. Thatcher, through his sole proprietorship, held income-producing community assets and that Allied, as a business, was to be treated and valued as a community asset. In valuing Allied as a community asset, Mr. Thatcher hired an appraiser who capitalized Allied's average community earnings from 1977-1980 to arrive at a value for Allied as a community asset. In determining Allied's community earnings, the appraiser subtracted what he referred to as Mr. Thatcher's "owner's salary" from Allied's net income for each of the four years prior to 1981. In the appraisal report, it was noted that since "Mr. Thatcher is a primary producing technician as well as manager, his salary must be considered when computing [Allied's] actual [community] profit." The appraiser calculated an "owner's salary" for Mr. Thatcher of $ 26,000 in 1977, $ 27,768 in 1978, $ 32,406 in 1979, and $ 36,962 in 1980. As a sole proprietor, *570 Mr. Thatcher did not have a "salary" per se as he was entitled to all income from Allied after paying all expenses associated with his business. Although the term is not defined by the valuation report, we find that "salary," as used therein, refers to the value which would be attached to Mr. Thatcher's services if he were employed by an unrelated third party as an employee. In calculating these figures, the report "assumed a 40 hour work week on an hourly salary of $ 12.50 for 1977." This 1977 "hourly salary" was used to compute a yearly "owner's salary." The 1977 "hourly salary" was then indexed upward each year utilizing a cost of living index. The report indicated that his was a "very conservative figure" for an "hourly salary" in 1977 for a dental technician. A divorce attorney for each spouse conducted all of the property settlement and alimony negotiations culminating in the Agreement. Although recognizing that Allied held community assets, Mrs. Thatcher's divorce attorney assumed that all of Allied's 1981 net income represented Mr. Thatcher's compensation for his personal services to Allied. Believing this to be true, Mrs. Thatcher's divorce attorney concluded that such *571 income did not represent community income. The treatment of this income for purpose of petitioner's property settlement was not addressed in the Agreement. In the spring of 1982, when Mr. Thatcher's accountant prepared Mr. Thatcher's separate 1981 Federal income tax return, he estimated that of Allied's 1981 net income of $ 65,328, $ 22,664 represented the value of Mr. Thatcher's services to Allied taxable solely to him, and $ 42,664 represented community income. His accountant estimated the value of Mr. Thatcher's services without consulting Mr. Thatcher. As for the $ 42,664 purportedly representing community income, his accountant calculated that one-half of this amount ($ 21,332) was also taxable to Mr. Thatcher as his half-interest therein. In accordance with the above allocation of Allied's 1981 net income, only $ 43,996 of such income was reported by Mr. Thatcher as taxable to him. The remaining $ 21,332 of Allied's net income was not reported by Mr. Thatcher. Prior to April 15, 1982, Mr. Thatcher did not inform Mrs. Thatcher that he took the position on his return that a substantial portion of Allied's 1981 net income was community income reportable by both spouses. *572 In preparing her 1981 Federal income tax return, Mrs. Thatcher did not report any of Allied's income as her taxable income. She only reported her earned income from her employment as an administrative assistant with a recycling company and alimony income received from Mr. Thatcher. Respondent has taken inconsistent positions and has asserted, alternatively, in separate notices of deficiency sent to each petitioner, that each petitioner is taxable on the $ 21,332 of Allied's net income which not reported by either Mr. Thatcher or Mrs. Thatcher. That is, as to Mr. Thatcher, respondent determined that all of Allied's income represented his separate income taxable solely to him. On the other hand, as to Mrs. Thatcher, respondent determined that $ 21,332 of Allied's net income represented her share of community income as indicated by Mr. Thatcher's Federal income tax return. OPINION A spouse residing in a community property state, such as California, has ownership rights in one-half of all of both spouses' community income and generally must report one-half of all such income when he files a separate Federal income tax return. United States v. Mitchell,403 U.S. 190 (1971); *573 United States v. Malcolm,282 U.S. 792 (1931). This is true regardless of whether he actually "receives" his share of such income. Kimes v. Commissioner,55 T.C. 774, 782 (1971). Section 66(c) provides relief under certain circumstances to a spouse ("nonattributable spouse") who is liable for tax on community income that is "attributable" to the other spouse. If the conditions of section 66(c) are satisfied with respect to any item of community income then the reported item of community income will be included entirely in the gross income of the spouse other than the nonattributable spouse. Respondent's determination that each petitioner is taxable on $ 21,332 of Allied's income is presumptively correct. Groetzinger v. Commissioner,87 T.C. 533 (1986). Each petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Wilmot Fleming Engineering Co. v. Commissioner,65 T.C. 847 (1976); Rule 142(a). The fact that respondent has made inconsistent determinations as to both Mr. Thatcher and Mrs. Thatcher for the same deficiency does not *574 destroy the presumption that respondent's determination is correct. Hoeme v. Commissioner,63 T.C. 18 (1974). The first issue is whether, pursuant to California community property law, any portion of the 1981 net income of Allied represents petitioners' community income. Mrs. Thatcher contends, first, that pursuant to California community property law, none of the 1981 net income of Allied represented community income. Mr. Thatcher counters and contends that $ 42,664 of Allied's 1981 net income represents community income of both petitioners, taxable one-half to each. Respondent's only concern in this case, is that all of Allied's income be taxed to someone. Respondent, however, has taken no position as to the merits of either spouse's contentions. California law provides that the "earnings and accumulations" of a spouse are the separate, noncommunity property of that spouse when both spouses are living separate and apart. Cal. Civ. Code section 5518 (West 1970). In Re Marriage of Imperato,45 Cal. App.3d 432, 119 Cal. Rptr. 590, 593 (1975), in interpreting section 5118, the court stated: The word 'earnings' is broader in scope than 'wages *575 and salary.' It can encompass income derived from carrying on a business as a sole proprietor where the earnings are the fruit or award for labor and services without the aid of capital. * * * Since petitioners were living separate and apart throughout 1981, we must determine to what extent the 1981 net income of Allied was the "fruit or award" for Mr. Thatcher's "labor and services" and to what extent it was derived from community assets or "capital" of Allied. To the extent we find that Allied's income was derived from community assets and not as the result of Mr. Thatcher's "earnings and accumulations," such income is community in nature. Unfortunately, each petitioner had the burden of proof in this case, but each petitioner presented little evidence to carry their respective burdens. We therefore must make a very difficult judgement on the scant evidence that is in the record. The record in this case reflects three different estimates of the value of Mr. Thatcher's services to Allied. The first estimate is from Mr. Thatcher's 1981 Federal income tax return. In preparing Mr. Thatcher's return, his accountant valued Mr. Thatcher's services to Allied at $ 22,664. The reason *576 this value was chosen was never explained and we place little weight on this estimate. We find that the second and third estimates of the value of Mr. Thatcher's services are more reliable indicators of Mr. Thatcher's "earnings." The second estimate is by an appraiser hired by Mr. Thatcher for purposes of valuing Allied as a community asset. Such appraiser valued Mr. Thatcher's "owner's salary" for 1980, the year prior to the year at issue, at $ 36,962 utilizing what the appraisal report indicated was a "very conservative" base "hourly salary." The third estimate is by Mr. Thatcher himself who testified that the value of his services ranged from $ 25,000 to $ 85,000. For lack of better evidence, we must place significant weight on the estimate of Mr. Thatcher's appraiser. Mr. Thatcher's estimate of the value of his service must also be considered. Mr. Thatcher's range of $ 25,000 to $ 85,000 as the value of his services gives support to the estimate of the appraiser who conservatively estimated that Mr. Thatcher's "owner's salary" was $ 36,962 in 1980. Further, since Mr. Thatcher had been involved in dentistry for 35 years and had a good reputation with the dentists he serviced *577 in the dental community, the value of his services would likely be greater than the "very conservative figure" derived by Mr. Thatcher's appraiser. After reviewing the record before us, and relying on principles similar to those set forth in Cohan v. Commissioner,39 F.2d 540 (1930), see Llorente v. Commissioner,74 T.C. 260, 268 (1980), modified on other grounds 649 F.2d 152 (2nd Cir. 1981), we conclude that $ 53,000 of the net income of Allied represents the "earnings and accumulations" of Mr. Thatcher. Accordingly, we hold that Allied's net income of $ 65,328 represents Mr. Thatcher's separate income to the extent of $ 53,000 and community income to the extent of $ 12,328. Mrs. Thatcher argues that to the extent we find that there is community income, the spouses, through their divorce attorneys as their agents, entered into an oral agreement that such community income be transmuted into the separate property of Mr. Thatcher. Pursuant to California community property law, community property of a spouse may be transmuted into the separate property of the other spouse, or vice-versa,, by an agreement the spouses. See Woods v. Security First National Bank,46 Cal. 2d 697 (1956); *578 Pacific Mutual Life Insurance Co. v. Cleverdon,16 Cal. 2d 788 (1940). We reject Mrs. Thatcher's argument that community income was transmuted into the separate property of Mr. Thatcher pursuant to state law. There is no evidence that petitioners or their attorneys agreed to convert Allied's community income into Mr. Thatcher's separate property. The second issues is whether section 66(c) applies so that Allied's unreported community income is not taxable to Mrs. Thatcher. Mrs. Thatcher argues that if we find that any income of Allied did represent community income, section 66(c) relieves her of the resulting income tax liability on such income. We have determined that $ 12,328 of Allied's net income represents community income. Unless section 66(c) is applicable, each petitioner will be liable for income tax on one-half of that $ 12,328 (additional taxable income of $ 6,164 each). To qualify for relief under section 66(c), Mrs. Thatcher must satisfy all four of the following conditions: (1) She must not have filed a joint return with Mr. Thatcher for 1981, (2) She must not have included in her gross income for 1981 an item of community income property *579 includible therein which, in accordance with the rules contained in section 879(a), would be treated as the income of Mr. Thatcher, (3) She must establish that she did not know of, and had no reason to know of, such items of community income, and (4) Taking into account all facts and circumstances, it is inequitable to include such item of community income in her gross income. If all four conditions of section 66(c) are satisfied, then the $ 12,328 of community income will be includible solely in the gross income of Mr. Thatcher for 1981. Sec. 66(c). [2]
Mr. Thatcher disputes only Mrs. Thatcher's contention that the third condition is satisfied. Section 66(c)(3) requires Mrs. Thatcher to establish that she did not know, and had no reason to know of the unreported item of community income. Mrs. Thatcher contends that she was unaware than any of Allied's income represented community income.
Mrs. Thatcher *580 was aware that Allied was generating income. She testified that Allied had very expensive dental machinery and equipment, that this machinery and equipment represented community property, and that such machinery and equipment was a factor contributing to the production of Allied's income. Further, the appraisal report, valuing Allied as a community asset, should have indicated to her that Allied was producing community income. Therefore, we must conclude that she knew or had reason to know that community assets were producing community income in 1981. That she was unable to determine how much of such income was in fact community income does not satisfy the condition of section 66(c)(3). Based on the foregoing, we hold that section 66(c)(3) has not been satisfied. Therefore, Mrs. Thatcher is not entitled to the relief provided by section 66(c) on her half of the $ 12,328 of community income. To reflect the foregoing and concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule References are to the Tax Court Rules of Practice and Procedure.↩
2. The requirements for relief under section 66 from reporting community income on a separate return are analogous to the so-called "innocent spouse rule" of section 6013(e) which relieves a spouse of liability in certain cases where joint returns are filed.↩