Filed 11/21/22 Marriage of DiTomaso CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of LINDA and DAVID J. DITOMASO. | 2d Civil No. B309236 (Super. Ct. No. D355825) (Ventura County) |
| LINDA DITOMASO,<br><br>    Appellant,<br><br>v.<br><br>DAVID J. DITOMASO,<br><br>    Appellant. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered the opinion filed herein on October 26, 2022, be modified as follows:

1. On page 14, the first sentence of the second full paragraph, after the heading "*Subway Russia distributions*," is modified to read as follows:

Linda contends the trial court erred when it denied her request for 50 percent of the Subway Russia distributions David retained from October 2013 through the final judgment on November 9, 2020, after deducting his payments for support, taxes, and community expenses.

2.  The following two sentences commencing at the bottom of page 15 and ending at the top of page 16 are deleted, including footnote 4:

Linda may not receive agreed-upon spousal support based on the Subway Russia income and then receive half of that income as community property.[4]  As the trial court stated, "She has received the benefit of her request."

3.  At the bottom of page 15, after the sentence ending, "of the gross income actually received by David," the following is inserted as footnote 4:

[4] Because we determine that the trial court properly interpreted the stipulation for temporary spousal support, it is unnecessary to discuss the alternate theories that Linda was barred by laches and judicial estoppel.

There is no change in the judgment.

Appellants' petitions for rehearing are denied.

GILBERT, P. J.        YEGAN, J.        BALTODANO, J.

Filed 10/26/22 Marriage of DiTomaso CA2/6 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of LINDA and DAVID J. DITOMASO. | 2d Civil No. B309236 (Super. Ct. No. D355825) (Ventura County) |
| LINDA DITOMASO,<br><br>    Appellant,<br><br>v.<br><br>DAVID J. DITOMASO,<br><br>    Appellant. | |

David J. DiTomaso and Linda DiTomaso each appeal from a judgment dividing their property after the dissolution of their marriage.[1] David contends the trial court erred when it: (1) made him individually responsible for certain investment losses, (2)

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

miscalculated Linda's tax savings from those investment losses, (3) rejected financial evidence he offered, (4) attributed all credit card charges paid from community property to him, (5) denied him *Epstein* credits[2] for community expenses he paid with separate funds, (6) miscalculated Linda's share of his postseparation salary, (7) equally divided compensation he received between the date of separation and the spousal support order, (8) miscalculated prejudgment interest on unpaid spousal support, and (9) omitted a credit he received. In her cross-appeal, Linda contends the trial court erred when it: (10) treated a stipulation for temporary support as a division of community property income, and (11) denied prejudgment interest for several awards.

We vacate the portion of the judgment dividing David's compensation received between the date of the parties' separation and the spousal support order, and the portion calculating prejudgment interest on unpaid spousal support, and we remand for recalculation of those amounts. We also order the judgment be modified to include the omitted credit. In all other respects, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Linda and David married in 1980. Linda worked as a teacher and took care of their children and household. David managed businesses in which the community had invested (primarily Subway restaurant franchises in Ventura County and Russia). The Ventura County Subway franchises were owned by and operated through 3H Network Inc., which David and Linda owned jointly. The community invested $131,000 to purchase a 24 percent stake in Subway Russia, LLC, which sold Subway

---

[2] *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85.

2

restaurant franchises in Russia, eventually growing to over 700 locations.

During the marriage, David invested $1.4 million of community funds in a motorcycle parts business, 50's Boys, LLC, without informing Linda of the amount. The business failed after about four years. Part of the investment was funded by a $400,000 loan David received from Richard Graniere.[3] David repaid the loan, with interest, using community funds.

David and Linda separated on November 14, 2012. Their marriage was dissolved in 2017. Three years later, the court entered judgment, dividing the parties' assets and ordering that David pay spousal support.

## DISCUSSION

### *Investment losses from 50's Boys*

David contends the trial court erred when it found he breached his fiduciary duty to Linda by failing to disclose the $1.4 million in community funds invested in 50's Boys and attributed the entire investment loss to him. We disagree.

A spouse has a fiduciary duty "to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable." (Fam. Code, § 1100, subd. (e).) Spouses have the same fiduciary duty toward each other as nonmarital business partners. (Fam. Code, § 721, subd. (b).) Each partner must thus furnish the other "[w]ithout demand, any information concerning the partnership's business and affairs reasonably required for the proper exercise of the

---

[3] Graniere is also spelled Greniere in some documents.

3

partner's rights and duties under the partnership agreement."
(Corp. Code, § 16403, subd. (c)(1).)  This includes "'the spouse's
rights and duties in the management and control of community
property.'"  (*In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136,
146 (*Kamgar*).)

"The existence and scope of a fiduciary duty is a question of
law that we review de novo."  (*Kamgar, supra,* 18 Cal.App.5th at
p. 144.)  But "to the extent the court's decision below 'turned on
the resolution of conflicts in the evidence or on factual inferences
to be drawn from the evidence, we consider the evidence in the
light most favorable to the trial court's ruling and review [its]
factual determinations under the substantial evidence standard.
[Citation.]' . . . We review the trier of fact's finding a breach
occurred for substantial evidence, resolving all conflicts and
drawing all reasonable inferences in favor of the decision."  (*Ibid*.)

David testified that early in their marriage he tried to
inform Linda about their "various business activities."  Linda
responded that she was "not too worried about it" because if
something happened to David, his brother, cousin, and office
manager would "take care of everything."  David also testified
that Linda "chose not to be involved in the Subway business."  He
"tried to" discuss "the Subway business" with Linda in case
anything happened to him, but "[s]he had no interest."  He did
not tell Linda about loans he obtained during the marriage
because "she didn't have any interest on the business side of what
went on."

Linda testified that David "tried to tell [her] about business
activities" at times but she "kind of glazed over after a while."
"[H]e would ramble on and on" about business, but she did not
want to know "that much detail."  However, she told him that she

4

did want to know about "the big sales" and "the really important stuff." She knew they were investing money in 50's Boys, but David did not tell her the amount he invested, that he borrowed money from Graniere, or the amount lost.

The trial court weighed the conflicting evidence and concluded that Linda did not waive David's fiduciary obligations to her regarding 50's Boys. The court found: "David had a sua sponte duty to disclose the amount of the investment in [50's] Boys . . . . David's almost unfettered ability to manage the parties' business affairs under their implicit partnership agreement was limited to the Subway businesses. . . . [T]he $1.4 million investment in [50's] Boys was not envisioned by the implicit agreement between Linda and David regarding the operation of the Subway businesses." (Italics omitted.) The court held David responsible for the entire $1.4 million dollar loss (less tax savings), plus $186,251 in interest he paid Graniere for the loan.

The court's finding is consistent with *Kamgar*, *supra*, 18 Cal.App.5th 136. The wife there agreed her husband could risk $2.5 million of community funds in options trading, and she "ceded management and control" up to that amount. (*Id*. at pp. 140, 149.) But the husband breached his fiduciary duty as to an additional $8 million he invested without her knowledge or consent. (*Id*. at pp. 147-148.) Similarly, here, Linda waived disclosure about investments related to the Subway businesses but did not waive disclosure with respect to the 50's Boys investment.

David contends there was no evidence Linda would have objected to the investment, and thus no proof the failure to disclose caused the loss. But "[a] spouse has a claim against the

5

other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate," including a transaction that "cause[d] a detrimental impact to the claimant spouse's undivided one-half interest in the community estate." (Fam. Code, § 1101, subd. (a).) "Remedies for breach of the fiduciary duty by one spouse . . . include . . . an award to the other spouse of 50 percent . . . of any asset undisclosed or transferred in breach of the fiduciary duty." (Fam. Code, § 1101, subd. (g).) By failing to disclose the extent of the 50's Boys investment and the Graniere loan, David impaired Linda's "equal right of management and control over those funds." (*Kamgar*, *supra*, 18 Cal.App.5th at p. 148.)

*In re Schleich* (2017) 8 Cal.App.5th 267, upon which David relies, is inapposite. There, income was earned and spent during the marriage for the benefit of the community. (*Id.* at pp. 281-282.) Because the failure to disclose was in a postseparation income and expense declaration, the fiduciary breach did not impair the spouse's interest in the community estate. In contrast here, David's failure to disclose information during the marriage impaired Linda's interest in community property.

David also cites *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086, and *Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 932. They are inapposite because they are attorney malpractice cases that do not involve the Family Code remedies for impairment of interest in community property.

### *Tax savings*

The trial court reduced David's responsibility for the 50's Boys losses by $14,276, the amount the court found Linda saved in taxes. David contends the court erred in accepting the

6

calculations by Linda's expert and should have accepted the calculations by David's expert that Linda's tax savings were $255,971.

Net operating losses may be claimed in the year of the loss or may be carried forward or back to other tax years. (26 U.S.C. § 172.) The trial court found that David's expert failed to differentiate between losses from 50's Boys and other sources, but the analysis by Linda's expert was "unambiguous and credible." David has not directed us to any detailed tax documents in the record to establish when other business losses were claimed. Accordingly, the record does not show that the calculations accepted by the trial court were incorrect and does not rebut the presumption the trial court's conclusion on this issue was correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

*Consideration of financial evidence*

David contends the trial court erroneously rejected financial evidence he offered, and, as a result, erroneously denied him reimbursement for community expenses he paid. We disagree.

In July 2017, the parties stipulated that David "does not intend to have his forensic accountant, Wayne Lorch, CPA, testify at the trial regarding the receipts and disbursements of community property by [David] following separation of the parties." Based on that stipulation, Linda canceled Lorch's deposition.

In August 2019, the court issued a tentative statement of decision ordering David to provide a "detailed and accurate" accounting on several issues: distributions to David from 3H Network, the source of funds used for improvements to his home, and community expenses he paid from separate property. At a

7

subsequent hearing, the court ordered David to give a "written response" regarding his receipt of community funds from 3H Network, his use of those funds to pay community debts, and his use of separate property to pay 3H operating losses and other community property debts.

In October 2019, David submitted a declaration from Lorch with about 600 pages of schedules. The court stated the declaration did not include the requested accounting of funds. In response, David submitted additional declarations from Lorch in February and March 2020 with supporting schedules tracing the community or separate property source for each transaction. Lorch described each credit card transaction and the source of credit card payments.

After the parties submitted evidence at trial, David asked to reopen and have Lorch testify. (Fam. Code, § 217.) David stated he was willing to submit the issues on the declarations if the trial court would "entertain and receive and review Mr. Lorch's later declaration" and "if the latest declaration is considered." Linda agreed the accounting issues could be "heard on admissible testimony in declarations rather than an evidentiary hearing."

The trial court "read and considered all the documents filed by both parties." It found the Lorch declarations did not provide the "detailed and accurate" accounting required to show David used separate funds to repay community debts (a loan to his parents, Hawaii timeshare, and life insurance premiums). It found that Lorch's March 2020 declaration did not refer to the evidence submitted in his October 2019 declaration. The court considered statements from Lorch and concluded his accounting practices regarding the Graniere loan "negatively impact Mr.

8

Lorch's credibility as a forensic accountant in this case." The court also "question[ed] the credibility of Mr. Lorch's opinion" regarding use of 3H Network funds to pay David's separate expenses.

The trial court's statements show it did not "ignore[]" or "[e]rroneously [r]eject[]" the financial evidence David submitted. Instead, the court found some of the evidence untimely, some of it unpersuasive, and some of it unresponsive to the court's requests. Because we do not reweigh the evidence or reconsider credibility determinations, no error has been shown. (*In re Marriage of Friedman* (2002) 100 Cal.App.4th 65, 71.)

*Credit card expenses*

David contends the trial court erred when it charged him with all the credit card expenses he paid by using community funds. We disagree.

After separation, David used $470,000 of community 3H Network funds to pay credit card charges. Lorch concluded that only $216,866 of the charges were David's personal expenses. But many of the entries in the schedules Lorch created did not designate whether they were community or separate expenses. Linda's forensic accountant challenged Lorch's methodology and questioned whether he properly characterized certain charges as community expenses.

The trial court found that Lorch "did not explain how he concluded" that approximately $254,000 in credit card charges were community business expenses. While some of the charges "were likely community expenses paid with his separate property," David "extensively commingled the 3H funds with his personal funds and failed to keep and/or produce the detailed and complete contemporaneous records to support his reimbursement

9

claim regarding what accurate amount of the $470,000 in personal credit card charges were made on behalf of the community." The court thus ordered David to reimburse Linda $235,000.

The trial court's order was proper. Because David was the "managing spouse" of the 3H Network funds and admitted spending some community funds for separate debts, the court properly allocated to him the burden to "prove the proper disposition" of the community assets he controlled. (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1267-1268.) Whether David met that burden is a question of fact we review for substantial evidence. (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057-1058.) Although David likely used some of the funds for community expenses, he had the burden to show how much. The record supports the trial court's conclusion that he failed to meet that burden. Accordingly, the court properly denied David credit for the community expenses he failed to establish.

Epstein *credits*

David contends the trial court erred when it denied him *Epstein* credits for community debts he paid with separate property funds after separation. (*In re Marriage of Epstein*, *supra*, 24 Cal.3d 76, 84-85.) We review denial of *Epstein* credits for abuse of discretion. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318-319.)

Lorch declared that David used his separate funds to make payments for community debts, i.e., an Arizona condominium and Hawaii timeshare, to repay a loan from his parents, and for premiums on four life insurance policies. The trial court concluded that Lorch did not trace any payments to a separate

10

property source and David failed to carry his burden of proof. No abuse of discretion has been shown.

*3H Network salary*

David contends the trial court erred when it ordered him to pay Linda $49,000 as her community property share of his 2012 salary from 3H Network. We disagree.

In 2012, 3H Network paid David a salary of $112,000. Based on the parties' separation date of November 14, 2012, the trial court calculated that David earned $98,000 of that salary before separation. It ordered him to pay Linda half of that amount.

David's earnings during the marriage are community property. (Fam. Code, § 760.) "The word 'earnings' is broader in scope than 'wages' and 'salary.' It can encompass income derived from carrying on a business . . . where the earnings are the fruit or award for labor and services without the aid of capital." (*In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 437, abrogated by statute on another point as stated in *In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 624-625.) We review for substantial evidence the trial court's determination that property is community or separate. (*In re Marriage of Wozniak* (2020) 59 Cal.App.5th 120, 130.)

David challenges the trial court's calculation, arguing Linda's share should be based on the $68,000 he received in November and December 2012. But when the payments were *received* is not relevant. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 846-848 [wife had community property interest in husband's pension rights "created predominantly through community effort," even though it vested after separation].)

11

The trial court properly calculated Linda's share of the *total* salary received for the portion of the year before separation. No error has been shown.

*Subway Russia salary*

David contends the trial court erred when it divided equally the distributions he received from Subway Russia from the date of separation until the effective date of the support order, "without consideration of compensation to David." We agree.

Based on the $479,250 David received from Subway Russia from the date of separation (November 14, 2012) through the effective date of the spousal support order (October 1, 2013), less taxes he paid on the distributions, he was ordered to pay Linda $147,034. But the trial court found "beyond any doubt that a substantial portion of the Subway Russia distributions are current compensation to Mr. DiTomaso . . . for [his] very significant ongoing full-time contributions of talent, skills and time towards the success and viability of the company." The court found that $12,000 per month, in addition to director's fees, was attributable to David's time and effort and would be treated as separate property. David testified that his efforts for Subway Russia were consistent between 1998 through 2013, and Linda does not cite any conflicting evidence.

David's earnings after separation were his separate property. (Fam. Code, § 771, subd. (a).) Substantial evidence does not support the court's order dividing the Subway Russia distributions equally without crediting David's efforts. (*In re Marriage of Wozniak*, *supra*, 59 Cal.App.5th at p. 130.) Accordingly, we reverse the award of the Subway Russia distributions for the period November 14, 2012, to October 1,

2013, and remand with instructions for the trial court to allocate as David's separate property the amount representing his efforts during that period. (See *Beam v. Bank of America* (1971) 6 Cal.3d 12, 18 [discussing allocation methods].)

*Interest on support payments*

David contends the court miscalculated prejudgment interest he owed on past spousal support. We agree.

The court ordered David to pay interest of $76,137 through August 8, 2018, additional interest of $35,031.40 through August 8, 2020, plus interest of $48 per day thereafter until entry of judgment. The court based its order on calculations prepared by Linda's expert, Mary Ellen Sebold.

But Sebold did not follow the *statutory mandate* to calculate interest based on the principal and interest balances after each payment is made. Unpaid support balances are charged 10 percent interest. (Code Civ. Proc., § 685.010, subd. (a).) "[I]nterest accrues when *each installment* becomes due and remains unpaid." (*In re Marriage of Cordero* (2002) 95 Cal.App.4th 653, 657; Code Civ. Proc., § 685.020, subd. (b).) Support payments shall be allocated first to the current month's support, then to unpaid principal in the order in which the obligations matured, then to accrued interest. (Code Civ. Proc., § 695.221, subds. (a)-(c).) "The statute requires credit to be applied in [that] specific order." (*Y.H. v. M.H.* (2018) 25 Cal.App.5th 300, 306.)

Here, Sebold calculated 10 percent interest on the balance owing on an annual basis, regardless of any intervening reductions in the principal balance. That was error. We accordingly vacate the award of prejudgment interest on unpaid

13

spousal support and remand for calculation of the correct amount.

*Clerical error in judgment*

David contends the trial court credited him with $1,544.50 based on 2020 losses of 3H Network but overlooked this amount when it calculated his total credits (Judgment, paragraphs 18, 38-41). Linda does not dispute this contention. We order the judgment be modified to add that amount.

*Subway Russia distributions*

Linda contends the trial court erred when it denied her request for 50 percent of the Subway Russia distributions David retained after making support payments from October 2013 through the final judgment on November 9, 2020. We disagree.

The parties stipulated that effective October 1, 2013, based on David's salary and distributions from Subway Russia, he would pay temporary spousal support of $27,876 per month. The "factual basis for support" was the DissoMaster data screen, which listed David's "Wages + Salary" (presumably his Subway Russia director's fees) as $9,333 and his "Other taxable income" (presumably the Subway Russia "royalty" income) as $77,329. The stipulation stated the support orders were "temporary & without prejudice," and could be modified "upon a showing of a significant change of circumstances." The payments were in fact reduced twice—and later suspended altogether—when the Subway Russia distributions were reduced. In each case, the support Linda received was based on the amount of Subway Russia distributions. The stipulation did not purport to distribute the Subway Russia *stock*, which was divided equally in the final judgment.

14

If a stipulated order is unambiguous, we review it de novo. (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 27.) "If an order is ambiguous, the reviewing court may examine the record for its scope and effect and may look at the circumstances of its making." (*Ibid*.) When the trial court considers conflicting parol evidence to interpret an agreement, we review its findings for substantial evidence. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

We agree with the trial court that the stipulation "cannot be understood otherwise than as an agreement to divide the community estate." The stipulation itself did not suggest that Linda would retain a claim against the income upon which the spousal support payments were based. And, as noted by the trial court, the surrounding circumstances show the parties treated the Subway Russia distributions as David's separate property in return for increased support during the period October 1, 2013, to November 9, 2020, and did not treat the support payments as advance payments of community property distributions.

The stipulation did not transmute the Subway Russia distributions from community property into David's separate property. (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 204; see Fam. Code, §§ 850-852.) Instead, the stipulation was a written agreement to divide the community income through support payments. (Fam. Code, § 2550.) The court reasoned, "By electing to receive a fixed amount of support based upon allocating all of those dividends to David, the risk that David's income might decline was entirely on David; Linda would receive the same amount of support each month regardless of the gross income actually received by David." Linda may not

15

receive agreed-upon spousal support based on the Subway Russia income and then receive half of that income as community property.[4] As the trial court stated, "She has received the benefit of her request."

*Other prejudgment interest*

Linda contends the trial court erred when it declined to award her prejudgment interest on the distributions ordered for her half of the $186,251 loan interest David paid Graniere, and the $225,000 and $286,000 David took from 3H Network. We disagree.

"A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day. . . ." (Civ. Code, § 3287, subd. (a).) We "independently review whether and when the plaintiff's damages were made certain or capable of being made certain by calculation." (*Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 296.)

The amount of interest David paid Graniere was the subject of conflicting evidence. The payments from 3H Network also did not reflect a certain debt; the court awarded Linda half of the entire amounts because the funds were commingled, and David failed to provide an accounting of community versus separate funds. Because these amounts were uncertain, the court did not err when it declined to order prejudgment interest

---

[4] Because we determine that the trial court properly interpreted the stipulation for temporary spousal support, it is unnecessary to discuss the alternate theories that Linda was barred by laches and judicial estoppel.

for those payments.  (*Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 729.)

DISPOSITION

The judgment is vacated insofar as it failed to award David credit for his salary from Subway Russia between November 14, 2012, and October 1, 2013, and miscalculated prejudgment interest on unpaid spousal support.  We remand the matter for the trial court to recalculate these amounts, consistent with this opinion.  We also order the court to modify the judgment to include the $1,544.50 credit to David based on 2020 losses of 3H Network.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.


17

John W. Ouderkirk, Temporary Judge
(Pursuant to Cal. Const. art. VI, § 21.)

Superior Court County of Ventura

_____

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Appellant David J. DiTomaso.

Law Offices of James L. Keane and James L. Keane for Appellant Linda DiTomaso.